*In re* ESTATE OF HARRY SHLENSKY, Deceased.—(ESTHER SHLENSKY, Adm'r of the Estate of Harry Shlensky, Petitioner-Appellee, *v.* HAROLD SHLENSKY, Respondent-Appellant.)

First District (4th Division)   No. 62210

Opinion filed May 26, 1977.—Rehearing denied June 23, 1977.

Joel S. Ostrow, of Chicago, for appellant.

Hoffman & Davis, of Chicago (Sol A. Hoffman, Edward J. Hladis, and Melvin A. Blum, of counsel), for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

On July 14, 1975, the trial court found respondent, Harold Shlensky, in contempt of court for his wilful failure to comply with an order directing him, *inter alia*, to render a statement of account and to turn over all assets of the estate of Harry Shlensky. Respondent was sentenced to jail for six months but could be released sooner upon his compliance with the order.

On appeal, respondent contends that the contempt order cannot stand because: (1) the contempt with which he was charged was both criminal and indirect in nature and required procedural due process safeguards which he was not afforded; and (2) he was excused, as a matter of law, from complying with the court's order because of impossibility of performance.

We disagree with respondent's contentions and affirm the trial court.

The record discloses that on February 21, 1969, letters testamentary

were issued to respondent, the brother of the decedent. Approximately 2½ years later, respondent, as executor of the estate, filed his first current account. On November 3, 1972, Esther Shlensky, the widow of the decedent, filed objections, alleging that respondent was guilty of fraud and mismanagement in connection with his executorship. Among other things, the widow charged respondent with failing to produce vouchers relating to certain expenditures of estate funds, to account for various estate assets, to pay taxes, to repay a personal debt owed by respondent to the decedent, withdrawing from the estate excessive and unauthorized charges for executor and estate management services, and misappropriating estate funds for personal use.

Thereafter, on November 27, 1972, the widow filed a petition seeking to stay respondent's authority to disburse other estate assets, to direct respondent to account for and return estate assets and to compel respondent to repay the unauthorized executor and management fees. On December 15, 1972, respondent filed his answer to the petition denying any wrongdoing on his part. He disclosed that he had hired an accountant to determine his indebtedness, if any, to the estate. While admitting that loans had been made to him as executor, respondent denied that the loans were personal in nature and contended that all but $1,797.20 of the loans, which totaled $128,524.74, had been repaid.

On May 17, 1973, pursuant to petition, an order was entered requiring respondent, *inter alia*, to account for "all funds and other assets of the estate borrowed or otherwise taken or appropriated by him for use by him or any member of his immediate family * * *." The order also mandated an accounting of the executor and management fees received by respondent. On the same date, the widow filed a supplemental petition, again reciting many of the allegations of fraud and concealment and asserting that the respondent as executor continued to misappropriate funds, that he had forfeited his right to fees, that he had used excessive fees as a ruse to gain money to repay sums he owed the estate and that he had wrongfully transferred estate money to his wife and son.

On May 30, 1973, respondent was ordered removed as executor for "failure to present a verified account and close the estate."

On July 11, 1973, the widow petitioned the court to find respondent in contempt of court and to sanction him for his failure to comply with the order of May 17, 1973. In response to this petition, the respondent filed a document setting forth data regarding certain stock purchases, stock sales and receipts and disbursements of certain funds.

On July 10, 1973, the widow presented a motion for discovery to compel respondent to turn over certain books and records for inspection and copying. After a hearing, respondent was directed to make the various books and records available by July 19, 1973. Respondent failed

to comply fully with this discovery order and five subsequent orders to produce.

After respondent's failure to comply with these orders, the widow filed another petition on November 20, 1974, seeking the entry of a rule directed to respondent to show cause why he should not be held in contempt of court and sanctioned for his failure to comply with the orders of the court.

On February 28, 1975, the court appointed Samuel J. Betar as administrator de bonis non with the will annexed of the estate. On March 13, 1975, Betar filed his petition alleging that the court had directed the respondent to turn over all the assets of the estate to Betar and to file a final account. The petition further alleged that no assets had been turned over by the respondent nor had a final account been filed. Lastly, the petition set forth that the estate inventory filed on December 3, 1969, listed assets totaling some $650,000. The petition requested the court, pursuant to section 300 of the Illinois Probate Act (Ill. Rev. Stat. 1973, ch. 3, par. 300), to state an account on behalf of respondent as the previously removed executor.

By order of March 21, 1975, the court granted the relief sought by Betar in his petition.[1] Further, the court ordered respondent to turn over to Betar, by April 10, 1975, all inventory assets and other items of estate property or their market value along with a statement of account. All interest, dividends and other increments also were to be furnished by respondent and he was to account for all tax penalties resulting from his management of the estate.

It was not until June 19, 1975, that respondent tendered certain caretaker accounts to the attorneys for the widow. Hearing on objections to the caretaker accounts was set for July 10, 1975. In the interim, the widow of the decedent, with leave of court, replaced Betar as administrator.

On July 14, 1975, the court ordered that the widow be the recipient of all items directed to be turned over by the respondent to Betar pursuant to the court order of March 21, 1975. The order further noted that the cause was heard on that date on "the court's continuance on a Rule to Show Cause against Harold Shlensky."

Attending the hearing before the trial judge on July 14, 1975, were the respondent, his counsel Jerome J. Zelden, attorney John P. Sullivan on behalf of the widow, attorney Martin Ciotti on behalf of other heirs of the decedent, attorney Stephen Chester on behalf of Blanch Zelog, and James A. Erskine, an accountant retained by the respondent.

---

[1] While the order is dated March 20, 1975, it bears the court clerk's stamp showing the filing date of the order as March 21, 1975. The record refers to the order as the order of March 21, 1975.

The record discloses that respondent's attorney, Jerome J. Zelden, in addressing the court, acknowledged that on July 10, 1975, the court read into the record the order of March 21, 1975. Further, the record discloses that at the hearing on July 14, 1975, the issue of respondent's alleged contempt in failing to abide by the order of March 21, 1975, was considered. At the conclusion of the hearing, the trial court found respondent "guilty of wilful contempt for failure to comply with the order heretofore entered March 21, 1975 stating an account pursuant to Section 300 of the Probate Act of Illinois." The court's order required that "the clerk issue a mittimus directing the Sheriff to take and keep custody of Harold Shlensky until he complies with the order heretofore entered on March 21, 1975, as amended by order entered this date stating an account pursuant to section 300 of the Probate Act of Illinois or until released by process of law. The commitment shall not exceed a period of 6 months."[2]

Thereupon, respondent was taken into custody. The following day, notice of appeal was filed by respondent and pursuant to an order of this court, a stay bond was entered and respondent was released from custody that day pending the outcome of this appeal.

■■ The various categories of contempt were set forth in *Eden v. Eden* (1975), 34 Ill. App. 3d 382, 388, 340 N.E.2d 141, 146, where the court stated:

> "Contempt of court generally consists of any act which is calculated to obstruct, embarass or hinder the court in the administration of justice and which is committed for the purpose of lessening the authority or the dignity of the court. (*E.g., People v. Miller*, 51 Ill. 2d 76, 78, 281 N.E.2d 292, 293; *In re Estate of Melody*, 42 Ill. 2d 451, 452, 248 N.E.2d 104, 105.) Moreover, there are four types of contempt which are delineated as follows: (1) indirect contempt which entails a contumacious act committed outside the presence of the court (*e.g., People v. Javaras*, 51 Ill. 2d 296, 300, 281 N.E.2d 670, 672; *Kay v. Kay*, 22 Ill. App. 3d 530, 318 N.E.2d 9 (abstract opinion)); (2) direct contempt which involves an act committed in the presence of the court (*e.g., People v. Clark*, 4 Ill. App. 3d 301, 303, 280 N.E.2d 723, 724; *Kotowski v. Kotowski*, 3 Ill. App. 3d 231, 233, 278 N.E.2d 856, 857); (3) civil contempt which consists of failing to do something ordered by the court, usually for the benefit of the opposing litigant (*e.g., People ex rel. Kazubowski v. Ray*, 48 Ill. 2d 413, 416, 272 N.E.2d 225, 226, *cert. denied*, 404 U.S. 818, 30 L. Ed. 2d 118, 92 S. Ct. 78; *Sullivan v. Sullivan*, 16 Ill. App. 3d 549, 551-52, 306 N.E.2d 604, 605); and (4)

---

[2] A separate order directed that Esther Shlensky, the widow, and administrator, be the recipient of the estate assets in place of Samuel Betar, who was designated by the order of March 21, 1975.

criminal contempt which comprises conduct directed against the dignity and authority of the court or the judge acting judicially (*e.g., Sullivan v. Sullivan*, 16 Ill. App. 3d 549, 551, 306 N.E.2d 604, 605; *George v. Toal*, 6 Ill. App. 3d 329, 286 N.E.2d 41 (abstract opinion))."

Initially, respondent contends that since it is alleged that he was guilty of fraud, mismanagement and breach of fiduciary duty with respect to his executorship, that in effect he is charged with serious misconduct and an affront to the court's dignity and authority. (*City of Chicago v. Hart Building Corp.* (1969), 116 Ill. App. 2d 39, 253 N.E.2d 496.) Furthermore, respondent asserts he is exposed to criminal prosecution and, if convicted he can be jailed. Thus, respondent claims the alleged contempt is criminal in nature. We disagree.

■■■ Criminal contempt generally involves an intent to undermine the court's authority. (*People ex rel. Kunce v. Hogan* (1976), 37 Ill. App. 3d 673, 346 N.E.2d 456.) Principally, a sanction for criminal contempt is instituted to punish, as opposed to coerce, a contemnor for contumacious conduct. As recited in *People v. Marcisz* (1975), 32 Ill. App. 3d 467, 471, 472, 334 N.E.2d 737, 740, *modified on other grounds* (1976), 65 Ill. 2d 206, 357 N.E.2d 477:

> "However, where the proceeding and punishment indicated a punitive rather than a coercive purpose, the contempt has been construed as criminal. In both *Board of Junior College District No. 508 v. Cook County College Teachers Union*, 126 Ill. App. 2d 418, 262 N.E.2d 125 (1st Dist., 1970), *cert. denied*, 402 U.S. 998 (1971), and *County of McLean v. Kickapoo Creek, Inc.*, 51 Ill. 2d 353, 282 N.E.2d 720 (1972), defendants were imprisoned for a definite term for violating a prohibitory injunction. In neither case was there a coercive order issued for the benefit of an opposing party, and both courts noted that the conduct was direct interference with the authority of the court."

Again, in *People v. Gray* (1976), 36 Ill. App. 3d 720, 344 N.E.2d 683, the court described criminal contempt as punitive in nature and as used for the protection of the judicial process. Where criminal contempt is involved and the contemnor is sentenced to a definite term in jail, the contemnor is unable to avoid the punishment by complying with the court order.

■■ In contrast, civil contempt proceedings are prospective in nature and usually instituted where a party has failed to perform an affirmative act which that party had been ordered to do for the benefit of the opposing party. In effect, a civil contempt proceeding is but a continuation of the original proceeding which resulted in the order or decree. The court seeks to compel obedience to its order by punishment

which the contemnor can avoid by compliance with the order or by punishment imposed until there is compliance. (*People v. Redlich* (1949), 402 Ill. 270, 83 N.E.2d 736; *Board of Junior College District No. 508 v. Cook County College Teachers Union* (1970), 126 Ill. App. 2d 418, 262 N.E.2d 125, *cert. denied,* 402 U.S. 998, 29 L. Ed. 2d 165, 91 S. Ct. 2168 (1971).) It has been said that criminal contempt consists in doing what has been prohibited whereas civil contempt consists in refusing to do what has been ordered. *Shillitani v. United States* (1966), 384 U.S. 364, 16 L. Ed. 2d 622, 86 S. Ct. 1531.

■■ In this case, it is clear that the sanction invoked against respondent is coercive and seeks to bring about his compliance with the court's order of March 21, 1975, which required him to release and turn over the various accounts and assets. Here, the contempt is bottomed on respondent's apparent refusal to do that which the court ordered. The sanction invoked against respondent can be terminated upon his compliance with that order. We must therefore conclude that the contempt in the instant proceedings is civil in nature.

Respondent next contends that the contempt must necessarily be indirect since the alleged misconduct of the respondent took place outside the presence of the court. (*People v. Vitucci* (1964), 49 Ill. App. 2d 171, 199 N.E.2d 78.) Respondent further argues that since the alleged contempt was indirect, due process mandates that certain procedural safeguards be afforded to him including notice of the specific misconduct with which he is charged, an evidentiary hearing, and adequate notice of the time and place of such hearing. We agree.

■■■ The determination of whether the contempt in this case is direct or indirect is resolved by where and in what manner the alleged contemptuous conduct took place. Thus, if the misconduct of the contemnor is calculated to embarrass, hinder, or obstruct the court in its administration of justice and the act of misconduct occurs in the presence of the court while it is in session, the contempt is classified as direct. In cases of direct contempt all of the elements of the offense are matters within the court's own personal knowledge. (*People v. Skar* (1964), 30 Ill. 2d 491, 198 N.E.2d 101; *People v. Koniecki* (1961), 28 Ill. App. 2d 483, 171 N.E.2d 666.) Where the contempt is direct, the court may invoke punishment in a summary manner. Since the court in such a situation has personal knowledge of the contumacious conduct, the court may invoke its sanction without prior notice, written charges, plea, issue or trial. (*In re Terry* (1888), 128 U.S. 209, 9 S. Ct. 77, 32 L. Ed 405; *People v. Siegal* (1948), 400 Ill. 208, 79 N.E.2d 616; *People v. Javaras* (1972), 51 Ill. 2d 296, 281 N.E.2d 670.) Further presentation of evidence is unnecessary and no record need be made. *People v. Harper* (1975), 28 Ill. App. 3d 820, 329 N.E.2d 496.

■■ In this case, the failure to comply with the court's order of March 21, 1975, took place outside the court's presence. Consequently, the contempt in this proceeding is indirect.

■■ We note that the administrator contends that the contempt of respondent is direct in nature. The administrator claims that the contempt is direct since the fact of noncompliance with the order of March 21, 1975, by the respondent was determined in open court and in the presence of the trial judge. To claim that the respondent's contemptuous conduct outside of court is a direct contempt because of respondent's subsequent presence before the court in connection with the hearing on the alleged contempt is illogical. The contempt committed was the wilful failure to comply with the order of court concerning a benefit to a third party. The fact that the respondent appears before the court to be heard on the issue of whether he is in contempt is not a valid basis for concluding that the contempt is direct in nature.

Since the contempt in this case is indirect, we agree with respondent that certain due process procedures must be accorded to him. This requires that the respondent be given an adequate description of the specific misconduct with which he is charged, reasonable notice of the time and place of hearing on the charges and an evidentiary hearing. *People ex rel. Andrews v. Hassakis* (1955), 6 Ill. 2d 463, 129 N.E.2d 9; *People v. Gholson* (1952), 412 Ill. 294, 106 N.E.2d 333; *People v. Javaras* (1972), 51 Ill. 2d 296, 281 N.E.2d 670.

Respondent maintains that he was not afforded any of these safeguards. Consequently, respondent asserts that the action taken by the court against him is impermissible. The record does not support the respondent's contentions.

The report of proceedings of the hearing of July 14, 1975, explicitly indicates the presence of respondent and his counsel, an acknowledgment by respondent's counsel that at the hearing on July 10, 1975, the court read into the record the order of March 21, 1975, and a statement by respondent's counsel of action taken by respondent to effectuate compliance with the March 21 order. The court rejected a request by the respondent to allow his accountant additional time to prepare a financial report. Furthermore, statements and arguments of counsel were heard regarding the issue of respondent's alleged contempt for his failure to comply with the order of March 21.

■■ The record clearly indicates the respondent's awareness of the nature of the charges made against him, the fact that notice of the time and place of hearings on the charges was given to him and his active participation in a hearing on those charges which ultimately resulted in the court finding him in contempt for his wilful failure to comply with the order of the court. The hearing on July 14, 1975, afforded a full

opportunity for respondent to explain the reason for his noncompliance. Necessarily, we must conclude that respondent was not deprived of due process of law.

Respondent further claims that procedural due process was denied him since he should have been granted a hearing before a jury as mandated by the United State Supreme Court in *Bloom v. Illinois* (1968), 391 U.S. 194, 199-200, 20 L. Ed. 2d 522, 528, 88 S. Ct. 1477, 1481. In *Bloom* the court stated:

> "The Constitution guarantees the right to jury trial in state court prosecutions for contempt just as it does for other crimes."

■■ However, a jury trial is not constitutionally required in a civil contempt proceeding. *Shillitani v. United States* (1966), 384 U.S. 364, 16 L. Ed. 2d 622, 86 S. Ct. 1531; *Cheff v. Schnackenberg* (1966), 384 U.S. 373, 16 L. Ed. 2d 629, 86 S. Ct. 1523.) Therefore, we reject respondent's contention that he was entitled to a jury trial in the instant case where the contempt is civil in nature.

■■ Furthermore, even if we were to find the contempt criminal in nature, we would still reject respondent's contention since a jury trial is not available in a criminal contempt case except where the sentence renders the offense a serious contempt. *County of McLean v. Kickapoo Creek, Inc.* (1972), 51 Ill. 2d 353, 282 N.E.2d 720; *Bloom v. Illinois* (1968), 391 U.S. 194, 20 L. Ed. 522, 88 S. Ct. 1477. See *Cheff v. Schnackenberg* (1966), 384 U.S. 373, 16 L. Ed. 2d 629, 86 S. Ct. 1523; *Taylor v. Hayes* (1974), 418 U.S. 488, 41 L. Ed. 2d 897, 94 S. Ct. 2697; *Codispoti v. Pennsylvania* (1974), 418 U.S. 506, 41 L. Ed. 2d 912, 94 S. Ct. 2687. In Illinois, where no maximum punishment is prescribed for criminal contempt (*People v. Stollar* (1964), 31 Ill. 2d 154, 201 N.E.2d 97), the seriousness of the charge is determined by the severity of the actual sentence. (*Frank v. United States* (1969), 395 U.S. 147, 23 L. Ed. 2d 162, 89 S. Ct. 1503.) A jury trial must be afforded only where the sentence for criminal contempt exceeds six months or a $500 fine. (*County of McLean v. Kickapoo Creek, Inc.* (1972), 51 Ill. 2d 353, 282 N.E.2d 720.) In the instant case, the sentence imposed would not have rendered the contempt serious enough to require the respondent being granted a jury trial.

■■ Additionally, the record in this proceeding is devoid of any request by the respondent for a hearing before a jury. In fact, a close scrutiny of the record reveals that the first mention by the respondent of a request for a hearing before a jury on the contempt issue is found in the petition of the respondent filed in the appellate court on July 16, 1975, after the respondent had been found guilty of contempt, sentenced, and placed in custody.

■■ Respondent contends that since he is "an elderly man equipped

with a pacemaker who will serve six months in prison if the lower court is upheld," the alleged contempt is thereby of a serious type requiring that a jury trial be afforded him on the contempt charge. We believe that commitment of any length of time and under any circumstances and conditions is always of a serious nature. However, the seriousness of the contempt is founded on the length of the commitment ordered and not on the fact that a jail sentence can seriously affect the dignity and well being of the contemnor.[3] *Bloom v. Illinois* (1968), 391 U.S. 194, 20 L. Ed. 2d 522, 88 S. Ct. 1477.

Respondent also insists that any alleged contempt is excused by impossibility of performance on his part. The allusion to impossibility of performance is expressed by the respondent in vague and general terms. Respondent asserts that he has effected partial compliance by the filing of certain caretaker accounts. The record fails to disclose any evidence of respondent's compliance with the court's order of March 21, 1975.

■■  It is true that in a case such as this, contempt will not lie when the alleged contemnor, through no fault of his own, is in a position where he cannot comply with the order of the court. Nevertheless, the contemnor must present evidence showing his inability to comply and the reasons therefor. (See *Shapiro v. Shapiro* (1969), 113 Ill. App. 2d 374, 252 N.E.2d 93.) Although given adequate opportunity to explain his failure to comply with the court's order, the respondent offered no substantial excuse. The respondent's failure to comply with the March 21 order is prima facie evidence of the contempt. See *Cole v. Cole* (1967), 85 Ill. App. 2d 105, 229 N.E.2d 293.

■■  Respondent acknowledges that while he was ordered to deliver the accounts and assets of the estate to Betar he has not done so. He suggests, however, that he was excused from doing so since on the date of the contempt hearing he was directed to turn over the accounts and estate assets to the widow, the successor administrator. The respondent takes the position that the order of March 21 was therefore no longer binding on him. The respondent overlooks the fact that the essence of his contempt is based on his apparent and wilful noncompliance with the court's order and the fact that the respondent has not presented any meaningful reason for his failure to comply with the order. It is evident that if the respondent was ready to comply he could have so stated and sought the direction

---

[3] The contempt mittimus directed to the Sheriff of Cook County contained the following handwritten direction of the court:

> "The Sheriff of Cook County is instructed to refer the respondent to a physician in the medical unit of the Cook County Jail since the respondent allegedly has a pacemaker.
>
> /s/ Bernard A. Polikoff
> Judge."

of the court as to how to effectuate the turnover to the satisfaction of the court. Respondent's argument on appeal reflects his ongoing nonaction and dilatory maneuvers that led to the contempt finding in this case.

■■ A close review of the record clearly indicates the respondent's wilful and contumacious refusal to comply with the court's order. The time has arrived for the respondent to account to the estate and to the court. He has the key to his cell, should he desire to use it—all he need do is comply with the order of the trial court. *Sullivan v. Sullivan* (1973), 16 Ill. App. 3d 549, 306 N.E.2d 604; *People v. Marcisz* (1975), 32 Ill. App. 3d 467, 334 N.E.2d 737.

For the reasons stated the order of the trial court is affirmed and the w it will issue.

Affirmed.

DIERINGER, P. J., and ROMITI, J., concur.