FALCON, LTD., *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. CORR'S NATURAL BEVERAGES, INC., a/k/a R. J. Corr Naturals, Inc., *et al.*, Defendants-Appellants and Cross-Appellees.

First District (1st Division) No. 87—2687

Opinion filed July 25, 1988.

292

Hamman & Benn, of Chicago (George W. Hamman, Marvin N. Benn, and Wayne H. Michaels, of counsel), for appellants.

Johnson, Cusack & Bell, Ltd., of Chicago (Michael P. Siavelis, of counsel), for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

Defendants, Corr's Natural Beverages, Inc., an Illinois corporation, and its president Robert Corr, appeal from an order of the trial court finding them, along with counsel Marvin Benn and Corr's national sales and marketing director Dennis Weinhold, in contempt of court and imposing fines and ordering defendants to pay plaintiffs, Falcon Ltd., also an Illinois corporation, and its president Thomas Paulus, among other things, commissions due. Defendants, Benn, and Weinhold were found to have violated a previous court order enjoining them from breaching a distributorship agreement with plaintiffs and tortiously interfering with plaintiffs' business relationships. In this appeal, defendants contend: (1) plaintiffs failed to establish a *prima facie* case of contempt against them and Benn; (2) a change of circumstances excused them from complying with the court's injunction order; (3) Weinhold's due process rights were violated as he was not informed of the charges against him prior to trial; (4) defendants, Benn, and Weinhold were all deprived of their right to a jury trial; and (5) there was no evidence of commissions due and owing plaintiffs. For the following reasons, we affirm the civil contempt finding against defendants, but remand for a redetermination of the amount of commissions due. We reverse the criminal contempt convictions of Corr, Benn and Weinhold and remand for a jury hearing with respect to Corr's and Benn's convictions, if so demanded.

The proceedings giving rise to this appeal were commenced in October 1986, when plaintiffs filed a complaint seeking to enjoin defendants' breach of a distributorship agreement that gave plaintiffs the exclusive right to sell and distribute defendants' beverages throughout the State of Illinois on a commission basis, and to enjoin defendants' interference with plaintiffs' contractual and prospective relationships with their subdistributors. On February 27, 1987, the trial court issued a preliminary injunction against defendants, their counsel, and their agents restraining them from terminating the agreement, from directly or indirectly soliciting, accepting or filling orders for beverages with plaintiffs' subdistributors or any other distributors except plaintiffs, from interfering or conspiring to interfere with plaintiffs' existing and prospective relationships with their distributors, from reducing plaintiffs' commission of $1 per case on chocolate and ginseng flavored beverages and $.61 per case on other flavors, and from engaging in any conduct which interferes with plaintiffs' rights under the agreement. Defendants appealed the injunction order, but we affirmed its issuance in *Falcon, Ltd. v. Corr's Natural Beverages, Inc.* (1987), 165 Ill. App. 3d 815, 520 N.E.2d 831 (*Falcon I*).

Prior to this court's disposition in *Falcon* I, plaintiffs filed a motion for a rule to show cause why defendants and their counsel Marvin Benn should not be held in contempt for failing to comply with the February 27 order. In their motion, plaintiffs alleged that on June 30, 1987, July 7, 1987, and July 8, 1987, they placed orders for 6,900 cases of defendants' beverages, all of which were appropriated by defendants, who shipped and invoiced the orders directly to plaintiffs' wholesale distributors. Copies of these purchase orders were included as an exhibit in plaintiffs' motion. The motion further stated that on May 1, 1987, defendants sold 1,931 cases of beverages to distributor Natural Beverages, Inc., without payment of any commissions to plaintiffs. Attached to plaintiffs' motion was a copy of a letter dated June 20, 1987, from defendants to plaintiffs' wholesale distributors instructing them to place all orders with and make payments to defendants directly and "not accept any invoices from Falcon Ltd. for shipments on or after July 1, 1987." Plaintiffs additionally alleged that Benn knew of defendants' actions and approved them.

On July 20, 1987, defendants filed a memorandum in opposition to plaintiffs' motion containing affidavits from Robert Corr, Dennis Weinhold, and two of defendants' employees. Included with Corr's affidavit were copies of several letters beginning May 20, 1987, written by Corr to Thomas Paulus in which Corr informed Paulus of various defaults by plaintiffs, and requested that they be remedied or otherwise certain actions would be taken. These letters bear either Benn's initials, a date stamp of the law firm Hamman and Benn, or both. While defendants admitted in their memorandum that "some of the specific alleged acts have indeed occurred," they contend that they were justified because of "a change of circumstances" since entry of the injunction. Specifically, they alleged plaintiffs "entirely abandoned their territory," causing defendants' sales in Illinois to "plummet."

Plaintiffs replied to defendants' memorandum, and affixed to their response were the affidavits of Thomas Paulus and Gloria Rex, plaintiffs' accountant. Also attached, among other exhibits, was a letter dated June 26, 1987, from Paulus to Corr in which Paulus denied the allegations contained in Corr's prior letters, and stated that it was Corr himself who was thwarting plaintiffs' efforts to sell defendants' beverages.

On August 11, 1987, the trial court commenced a hearing on plaintiffs' motion for rule to show cause. At that time, plaintiffs orally moved, over defendants' objection, to include Dennis Weinhold as an additional respondent to their motion. Rather than presenting testimony at the hearing, plaintiffs relied on the pleadings, affidavits, and

exhibits previously submitted which the court found to "clearly show a violation" of the court's injunction order. Defendants then proceeded with their defense, calling both Robert Corr and Dennis Weinhold to the stand. Marvin Benn did not testify.

As in the memorandum opposing plaintiffs' motion, Corr and Weinhold admitted violation of the injunction, but testified that they were excused because there was a change of circumstances, namely that plaintiffs ceased business operations and therefore were not performing under the distributorship agreement. They explained that they were unable to call these circumstances to the trial court's attention as it lacked jurisdiction to modify the injunction once defendants appealed the issuance of that injunction. Corr also stated that he discussed the letters he sent to Paulus with his attorney Marvin Benn and sent draft copies of them to him before mailing them to Paulus.

Gloria Rex testified on behalf of plaintiffs in rebuttal. She stated that she overheard three telephone conversations between Corr and Paulus while performing accounting services at Falcon, Ltd.'s, offices. In the first conversation, Corr offered to purchase back the distributorship agreement from plaintiffs for $50,000 less $2,000 each day plaintiffs refused, and then threatened "to run Mr. Paulus out of business" and take his home, which was pledged as collateral for plaintiffs' debts. When Paulus replied that there was a court injunction, Corr told him he could "stick it up his ass and rotate on it." During a second conversation, using the same foul language, Corr refused to sell his Rocky Mountain Seltzer Water to plaintiffs for distribution to plaintiffs' subdistributors "to keep Falcon from making money on [it]." Rex related a third conversation in which Corr told Paulus he would take the distributorship away from him and tell all his customers to buy directly from defendants.

After considering the evidence, the trial court held Corr, Benn, and Weinhold in contempt of court, fining them $10,000, $10,000, and $2,500, respectively. The court further ordered that defendants and Benn pay plaintiffs' costs and attorney fees incurred in bringing their motion for rule to show cause, and that defendants pay plaintiffs $10,000 "representing a portion of the commissions and a portion of inventory due," and "place $7,000 representing the defendants [*sic*] repurchase of inventory from Falcon" in a separate account to await further order of the court. Finally, the court ordered defendants to produce copies of invoices for sales of their beverages in Illinois after June 26, 1987. It is from these rulings that defendants appeal. Plaintiffs filed a cross-appeal asking this court to compel defendants to pay plaintiffs commissions on defendants' sales of beverages to plaintiffs'

subdistributors after August 12, 1987, the date of the trial court's contempt order.

Before addressing the issues raised by this appeal, we must first determine whether the trial court's findings of contempt were criminal, civil, or both as different procedural rules will apply depending upon which category is being litigated. Plaintiffs maintain that the contempt was civil, defendants argue that it was criminal, and the trial court did not explicitly characterize its finding as either.

■■■ Generally, criminal contempt consists of acts tending to lessen the dignity or impede the process of the court, and such proceedings are instituted to vindicate the court's authority. Sanctions for criminal contempt are punitive in nature and are imposed to punish the contemnor for his contumacious conduct. Civil contempt, on the other hand, typically consists of failing to do something ordered by a court in a civil action for the benefit of the opposing litigant, and proceedings are instituted to compel or coerce obedience to the order or decree. (*Hoga v. Clark* (1983), 113 Ill. App. 3d 1050, 448 N.E.2d 196.) As a further distinction, civil contempt occurs when the contemnor fails to do that which the court has ordered, whereas criminal contempt consists of doing that which has been prohibited. (*In re Estate of Maslowe* (1985), 133 Ill. App. 3d 1043, 479 N.E.2d 1180.) Contempt may be further classified as direct or indirect depending upon whether the contemptuous conduct occurs within or out of the presence of the court. *People ex rel. Williams v. Williams* (1987), 156 Ill. App. 3d 438, 509 N.E.2d 460; *Eden v. Eden* (1975), 34 Ill. App. 3d 382, 340 N.E.2d 141.

■■ Applying these rules to the present case, it is apparent that the trial court made separate findings of criminal and civil contempt. While that portion of the court's order which directs defendants to pay plaintiffs commissions due and place funds in escrow for inventory is civil in nature as it seeks to bring about defendants' compliance with the February 27 injunction, the fines imposed against Robert Corr, Marvin Benn and Dennis Weinhold to be paid to the court are punitive in nature as they serve as punishment for the parties' allegedly wrongful termination of the distributorship agreement. Since all alleged contemptuous acts were committed outside the court's presence, both contempts may further be characterized as indirect.

■■ With this in mind, we initially will consider those findings of indirect criminal contempt against Corr, Benn and Weinhold. Persons charged with criminal contempt are entitled to all appropriate constitutional rights, including notice, a reasonable opportunity to defend,

assistance of counsel, a reasonable doubt standard of proof and the privilege against self-incrimination. (*In re Marriage of Wilde* (1986), 141 Ill. App. 3d 464, 490 N.E.2d 95.) Moreover, where the sentence imposed for criminal contempt exceeds six months in jail or a $500 fine, a jury trial must be afforded or a knowing waiver obtained. *County of McLean v. Kickapoo Creek, Inc.* (1972), 51 Ill. 2d 353, 282 N.E.2d 720; *In re Estate of Shlensky* (1977), 49 Ill. App. 3d 885, 364 N.E.2d 430.

■ Clearly, Corr and Benn were entitled to a jury trial since their respective fines are greater than $500 and the record reflects no waiver. Aside from the fact that Weinhold was also improperly deprived of a jury trial in this regard, he was not even informed of the charge against him until the morning of the evidentiary hearing when plaintiffs orally moved to have him named as a respondent to their motion for rule to show cause. The trial court never specifically ruled on that motion, and consequently Weinhold testified, without assistance of counsel, under the erroneous assumption that he was only a witness in this matter. We therefore reverse all three criminal contempt convictions and remand those of Corr and Benn to afford them the opportunity for a jury trial.

Having determined that Corr and Benn were entitled to a jury and that a new trial is required, we need to address the sufficiency of the evidence adduced at trial to sustain their convictions. Pursuant to the requirement of *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366, we believe that a trier of fact could conclude that Corr and Benn were proven guilty beyond a reasonable doubt. This does not mean that we are making a finding as to their guilt or innocence which would be binding on retrial, but rather our consideration of the sufficiency of the evidence admitted at trial will remove the risk of subjecting them to double jeopardy.

■ Given that a jury trial is not constitutionally required in a civil contempt proceeding (*In re Estate of Shlensky* (1977), 49 Ill. App. 3d 885, 364 N.E.2d 430), we may consider whether defendants were proven by a preponderance of the evidence guilty of civil contempt to warrant an award of commissions. (See *Central Production Credit Association v. Kruse* (1987), 156 Ill. App. 3d 526, 509 N.E.2d 136.) This question is one of fact for the trial court, and a reviewing court will not disturb its finding unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion. *In re Marriage of Lyons* (1987), 155 Ill. App. 3d 300, 508 N.E.2d 458.

■ Initially, defendants contend that plaintiffs' affidavits alone were not *prima facie* evidence of contempt, and in any event, their

failure to perform under the distributorship agreement was excused due to a change in circumstances. With respect to defendants' initial contention, the record reveals that the trial court not only considered plaintiffs' affidavits, but also the pleadings, exhibits and other affidavits filed by both parties in concluding that plaintiffs established a violation of the injunction by defendants. Indeed, defendants admitted such a violation in their memorandum opposing plaintiffs' motion for rule to show cause. In so doing, it became incumbent upon them to present evidence showing an inability to comply with the injunction and the reasons therefore. *In re Estate of Shlensky* (1977), 49 Ill. App. 3d 885, 364 N.E.2d 430.

Defendants claim that they satisfied this burden as they showed that plaintiffs had ceased operations, making it impossible for them to comply with the terms of the injunction. Yet, the testimony presented reveals that the decline in sales defendants experienced in March and April 1987 was not due to plaintiffs' conduct, but rather was attributed to other factors, including defendants themselves. In fact, both Dennis Weinhold and Gloria Rex attested to a proposal made during a meeting on March 5, 1987, by defendants asking plaintiffs to act as consultants and appoint distributors for defendants and assist in the marketing of their beverages.

■ Even assuming the truth of their accusations against plaintiffs, defendants, although precluded from obtaining relief from the trial court while an appeal of the propriety of the injunction was still pending (*Home Savings & Loan Association v. Samuel T. Isaac & Associates, Inc.* (1981), 99 Ill. App. 3d 795, 425 N.E.2d 985), nevertheless could have sought judicial relief from the appellate court, and conceded as much during oral argument. By failing to do so, defendants offered no valid excuse for their noncompliance, and, therefore, the trial court did not abuse its discretion in holding them in civil contempt.

■ Pursuant to its civil contempt judgment, the trial court, as noted earlier, ordered defendants to pay $10,000 to plaintiffs "representing a portion of the commissions and a portion of inventory due Falcon" and place $7,000 "representing the defendants [*sic*] repurchase of inventory from Falcon" in a separate account to await further court order. While the evidence discloses $7,532.26 in commissions due and owing plaintiffs for defendants' sale of beverages to Kehe Foods, Skandia, and Natural Beverage, this sum is not reflected in the trial court's written order cited above. We recognize the trial court's apparent attempt to offset plaintiffs' indebtedness to defendants while taking into account a credit memo for $10,189 issued by

defendants to plaintiffs for inventory they repossessed, yet its final judgment is not supported by the record. Accordingly, we remand the cause for a redetermination of commissions due.

Finally, in their cross-appeal, plaintiffs ask this court to enter an order directing defendants to pay commissions allegedly due them on sales of defendants' beverages after August 12, 1987. Yet, according to the record, plaintiffs never specifically requested payment of commissions due after the hearing. Rather, they sought in their motion for rule to show cause "an order for sanctions and for such other relief as the Court deems just," and in their closing argument, commissions "due and owing." Thus, upon remand, the trial court may decide whether plaintiffs are entitled to these additional commissions, and if so, how much.

For the reasons set forth above, the judgment of the circuit court of Cook County is affirmed in part, reversed in part, and remanded for a reassessment of commissions due and a new hearing for Corr and Benn on their criminal contempt convictions.

Affirmed in part; reversed in part and remanded.

CAMPBELL, P.J., and O'CONNOR, J., concur.