THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THE CITY OF EAST ST. LOUIS, Defendant (Sheryl Porter *et al.*, Indiv. and on Behalf of All Others Similarly Situated, Plaintiffs-Intervenors; Carl E. Officer *et al.*, Contemnors-Appellants).

Fifth District No. 5—89—0251

Opinion filed December 31, 1990.

Charles L. Wiest, Jr., of Vickers, Moore & Wiest, of St. Louis, Missouri, for appellants.

John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:
This case originated with the People filing a complaint against

defendant, City of East St. Louis (hereinafter City), for an injunction to halt the overflow of sewage from a sewer system owned by the City. During the course of proceedings, the City's attorney, Eric E. Vickers (hereinafter Vickers), and the City's chief executive officer, Mayor Carl E. Officer (hereinafter Officer), were held in direct civil contempt for failing to attend a hearing on March 31, 1989, concerning the City's sewage problem. Vickers was also held in contempt for violating the circuit court's order directing all attorneys involved in the proceedings to verify their motions by submitting them to the court in writing and under oath. Both Vickers and Officer appeal from the circuit court's orders holding them in direct civil contempt.

On appeal, Vickers and Officer essentially contend (1) that they were erroneously found guilty of "direct civil contempt" where, at most, they could be found guilty of "indirect criminal contempt," (2) that they were erroneously denied their due process rights, (3) that the sanctions imposed by the circuit court were punitive, not coercive, making the contempt actions criminal, not civil, (4) that since the contemnors were not able to attend the March 31, 1989, hearing through no fault of their own, they could not be held in contempt, and (5) that the circuit court's March 31, 1989, order requiring motions to be verified was not sufficiently clear so that any finding of contempt based upon a document filed by Vickers is not sustainable. We affirm in part and reverse in part.

The facts indicate that on February 17, 1989, the People, through the St. Clair County State's Attorney, filed a complaint for an injunction against the City to halt the overflow of sewage from a sewer system owned by the City. The first hearing was held on February 22, 1989, at which time a temporary restraining order was issued against the City. On February 28, 1989, the Land of Lincoln Legal Assistance Foundation, through its attorneys, Sheila Shunick and Bradley Le Boeuf, filed a petition to intervene in the action against the City on behalf of Sheryl Porter and Sandra Isaac, individually and on behalf of all other residents of the Villa Griffin housing project, where a major portion of the sewage problem was located. The sewage problem at the Villa Griffin housing project consisted of a nearby lake in which raw sewage had been dumped. The circuit court granted the petition to intervene.

On March 3, 1989, a hearing was held on the People's motion for a preliminary injunction. Upon completion of the hearing, a preliminary injunction was issued and the City was "enjoined and restrained from violating the Illinois Environmental Protection Act [(Ill. Rev. Stat. 1987, ch. 111½, par. 1012)] by causing or allowing the overflow

of sewage from the sewer system owned by the City and/or from depositing contaminants in the form of raw sewage from the sewage system owned by" the City. In addition, the circuit court ordered the elimination of the lake located near the Villa Griffin homes within three days. The City was to begin bypass pumping within 48 hours. The circuit court also ordered a review of the matter every 14 days to ensure compliance.

No one appeared on behalf of the City at either the hearing for the temporary restraining order or the preliminary injunction. The absence of both representatives of, and counsel for, the City prompted the circuit court to include as part of its March 3, 1989, order, a provision requiring that Officer be present at every hearing and review set in the matter. The circuit court also noted in its March 3, 1989, order that Officer's failure to appear could result in his being held in contempt.

The next scheduled hearing was on March 17, 1989, when the circuit court heard the City's motion to set aside portions of the March 3, 1989, order including that portion requiring Officer's presence at all hearings and reviews. Vickers and Officer appeared late for this hearing; however, the motion was heard, and the circuit court denied the City's request to set aside the order requiring Officer's presence at all hearings and reviews. The court ordered Officer to appear at all subsequent hearings concerning the sewage problems. A biweekly review was then scheduled for March 31, 1989.

On the afternoon of March 30, 1989, Vickers telephoned the judge and stated that he was in trial and would have difficulty attending the hearing scheduled for the next day. Vickers requested a continuance and told the judge that the other parties had no objection. Based upon these representations, the judge granted a continuance until April 7, 1989. After the judge's conversation with Vickers, she contacted the other attorneys involved in the case and learned that Vickers' representation, that the other parties had no objection to the continuance, was not entirely accurate. The judge then rescinded her order continuing the hearing. Later in the afternoon, Vickers called the judge and indicated that he had Mr. Le Boeuf and Mrs. Shunick on the telephone to discuss the matter. The judge told Vickers, "I'm not going to talk about it any more. I'm having court at 10:30 and everybody's going to be here."

At the hearing on March 31, 1989, the judge noted that Officer was not present. The court then discussed with the State's Attorney and the intervenors' attorneys Vickers' attempt on the previous day to obtain a continuance. Mrs. Shunick stated that there was a misun-

derstanding between her office and Mr. Vickers' office on the previous day, but that she did "not believe that there was any intentional misrepresentation on Mr. Vickers' part." Mrs. Shunick explained that she did not have any objection to the hearing being continued so long as the lake located next to the Villa Griffin homes was drained by the early part of the following week. According to Mrs. Shunick, Vickers believed that he had given her office a firm commitment that the lake would be drained by the early part of the following week, but her office did not believe he had given such a commitment to this request. Mrs. Shunick and her colleagues believed that Vickers was going to contact them again that day "to firm that up even more." Mrs. Shunick agreed with the judge that she expected that her condition that the lake be drained would be met before she would have no objection to a continuance. The State's Attorney stated that neither Vickers nor anyone from Vickers' office contacted him concerning the continuance. He stated that he was in contact with the Land of Lincoln office and that he had told them that he did object to a continuance, but that since the most serious sewage problem involved their clients, he would go along with their decision to continue the matter if they were satisfied with the progress made by the City.

Loretta Moore, a partner in Vickers' law practice, appeared for Vickers at the March 31, 1989, hearing. According to Moore, Vickers was in a felony trial in St. Louis City circuit court. Moore appeared in order to request a continuance on behalf of Vickers. She stated that she had no knowledge of any conversations concerning a continuance between Vickers and the other attorneys involved in the sewage litigation. When asked by the judge whether she was licensed to practice law in Illinois, Moore informed the court that she was not. Later in the hearing, the judge ruled that Moore would not be allowed to represent the City because she was not a member of the Illinois bar. The judge also concluded that Vickers had lied to her concerning the parties' agreement concerning a continuance. Because of the problems that arose over the oral continuance request, the judge ordered that all further motions be in writing, verified, and under oath. The judge noted for the record that Officer had not yet appeared and issued a petition for rule to show cause why Officer should not be held in contempt for his failure to appear. The petition for rule to show cause against Officer was set for Friday, April 14, 1989, at 10:30 a.m. The hearing then proceeded and witnesses from the Villa Griffin homes and the director of public works for the City testified. At the close of the evidence, Shunick asked the court to address the intervenors' petition for rule to show cause why the City should not be held in con-

tempt for failing to eliminate the lake located near the Villa Griffin housing project and for failure to continue bypass pumping. The petition for rule to show cause against the City was set at the next scheduled review date, Friday, April 14, 1989. The circuit court also reinstated an earlier order that it had vacated requiring the City to post a $500,000 bond.

Both Officer and Vickers appeared at the April 14, 1989, hearing. The judge discussed her order of March 31, 1989, requiring all motions to be verified, in writing, and under oath. According to the judge, Vickers violated this order when he attempted to hand her an envelope on April 3, 1989. The judge stated that on that date, Vickers appeared at her chambers and attempted to hand her an envelope. She asked Vickers whether its contents involved a pending case. Although Vickers answered "No," she thought he wavered in his response, and she refused to accept the envelope. She told him to file it in the appropriate court file. After Vickers filed the contents of the envelope, a clerk brought the file to the judge. She read only the first and last paragraphs to determine whether the letter requested some type of relief. The letter requested that the judge publicly apologize to Vickers for accusing him of lying. The judge stated that the letter did not comply with the civil practice rules for pleading, even though it contained a request of the court. The judge also determined that Vickers' letter of April 3, 1989, was another attempt at *ex parte* communication with the court. She also expressed her concern over two telephone calls made to her chambers by persons identifying themselves as employees of Vickers' law firm wanting to discuss with her docket calls and the merits of the orders she had entered. The judge told the callers she did not hold court over the phone and refused to discuss any court matters with them. After this disclosure for the record, the judge stated that she believed Vickers had violated the Code of Professional Responsibility and the supreme court rules prohibiting *ex parte* communication with a judge presiding over a pending matter and further stated that it was her duty as both a judge and an attorney to file complaints concerning Vickers' actions with the attorney disciplinary bodies in both Illinois and Missouri. The judge explained that even though she had criminal contempt powers to punish Vickers, she believed the matter should be left to the disciplinary boards so that she could focus on future compliance with the injunction.

Vickers responded to the circuit court that he had filed the letter only at the court's insistence and that he had not attempted an *ex parte* communication. Vickers explained that on April 3, 1989, he had hand-delivered copies of the letter to other attorneys involved in the

litigation. Vickers then explained that his failure to appear on March 31, 1989, was due to his being in trial on another matter in Missouri. After Vickers' response to the circuit court's accusation, he was found in direct civil contempt for failing to attend the March 31, 1989, hearing and for failing to comply with the circuit court's order of March 31, 1989, directing all attorneys to file verified motions, in writing and under oath. The circuit court ordered Vickers committed to the St. Clair County jail for six months or until he purged himself by posting a $3,500 bond.

The circuit court then took up the rule to show cause against Officer for his failure to appear at the March 31, 1989, hearing. Officer stated that on March 31, 1989, he had suffered from symptoms which his doctor later told him were consistent with either laryngitis and a head cold or the flu. "To the best of [his] knowledge," he had remained in bed for three days; however, when asked by the circuit court where he was on April 1, 2, and 3, Officer could not remember. He stated that he would need his scheduling book to refresh his memory. After Officer's comments in allocution, the court found him to be in direct civil contempt for failing to comply with its order that he appear at the March 31, 1989, hearing. The judge ordered Officer committed to the St. Clair County jail for six months or until he purged himself by posting a $3,500 bond. The remaining issues, the rule to show cause filed against the City, and the biweekly review, were then addressed.

Because the lake near the Villa Griffin homes had been almost completely drained, the petitioners withdrew their petition for rule to show cause. Leave to refile was granted to petitioners should the lake refill at a later date. Evidence was then presented on the status of the sewage problems. At the end of the evidence, the circuit court set aside its order for biweekly reviews. The next review was set for Friday, June 9, 1989, at 10:30 a.m. The circuit court ordered that all attorneys of record and Officer be present. The circuit court stated that if Vickers and Officer were still in jail on that date, the jailers could bring them to the courtroom.

The first contention raised by Vickers and Officer is that the circuit court improperly classified the conduct on which the orders were based. In order to adequately address this argument, it is necessary for several of Vickers' and Officer's contentions to be addressed simultaneously. Both Vickers and Officer contend that the trial court mischaracterized their contempt citations as direct and civil when they were actually indirect and criminal, which entitled them to the greater procedural due process rights afforded to those who are

charged with criminal contempt. We disagree and find that in both instances the circuit court properly classified the contempt citations as direct and civil.

■■■ Briefly stated, criminal contempt consists of acts tending to lessen the dignity or impede the process of the court, and such proceedings are instituted to vindicate the court's authority. Sanctions for criminal contempt are punitive in nature. (*Falcon, Ltd. v. Corr's Natural Beverages, Inc.* (1988), 173 Ill. App. 3d 291, 297, 527 N.E.2d 504, 508.) On the other hand, civil contempt typically consists of failing to do something ordered by a court and the result is a loss of benefit or advantage to the opposing party with the dignity of the court being only incidentally involved. (*Sullivan v. Sullivan* (1973), 16 Ill. App. 3d 549, 551-52, 306 N.E.2d 604, 605.) Another distinction is that in cases of civil contempt, the order of the court must provide the defendant with the "keys to his cell" enabling him to purge himself of the contempt by complying with the court's order. (*Continental Illinois National Bank v. Brach* (1979), 71 Ill. App. 3d 789, 792-93, 390 N.E.2d 373, 375-76.) Contempt may be further classified as either direct or indirect depending upon whether the contemptuous conduct occurs within or outside the presence of the court. (*Falcon*, 173 Ill. App. 3d at 297, 527 N.E.2d at 508.) Civil and criminal contempt may " 'entail similar characteristics.' " (*People ex rel. Scott v. Police Hall of Fame, Inc.* (1979), 69 Ill. App. 3d 501, 504, 387 N.E.2d 856, 859, quoting *County of Cook v. Lloyd A. Fry Roofing Co.* (1974), 59 Ill. 2d 131, 135, 319 N.E.2d 472.) In attempting to differentiate between these types of contempt, " '[t]he line of demarcation in many instances is indistinct and even imperceptible.' " (69 Ill. App. 3d at 504, 387 N.E.2d at 859, quoting *People ex rel. Chicago Bar Association v. Barasch* (1961), 21 Ill. 2d 407, 409, 173 N.E.2d 417, 418.) Applying these rules to the present case, we agree with the circuit court that Officer's and Vickers' failure to appear for the status hearing on the sewage matter are properly characterized as civil contempt. We address first the contempt orders based upon Vickers' and Officer's failure to appear at the March 31, 1989, hearing.

■■ The circuit court's contempt orders concerning the parties' nonappearance were civil in nature, as both attempted to bring about compliance with the original injunction. As indications that these contempt citations were civil, we note the circuit court's statements made at the March 3, 1989, hearing which indicated its concern about the welfare of the citizens of East St. Louis:

> "This Court is also concerned that the City of East St. Louis and its agents and its elected officials have ignored these pro-

ceedings, have ignored the pleas of the citizens of the City of East St. Louis and have a callous disregard for their health, their safety, their benefit and have shown a callous disregard to this Court and to this Court's Order, and according with that finding I'm going to order the Mayor of the City of East St. Louis, Carl Officer, to be present at every hearing concerning 89—CH—76 and to every review which is set by this Court. His failure to appear may or shall result in a Petition for Rule to Show Cause being heard by this Court, and, as you all know, one of the things that can be had is Mr. Officer can be held in contempt, and this Court will use its contempt powers if the Court finds it necessary, and that will be the Order of the Court."

The reinstatement of the $500,000 bond at the March 31, 1989, hearing is a further example that the circuit court was attempting to motivate the City to act. In reinstating the bond, the court stated:

"And the other thing I'm going to do, since I referred you to my Order of March 28, 1989 in which I granted portions of Mr. Vickers' motion to set aside the requirement of a posting of bond, I'm going to set aside that Order of March 28 and reinstate the need of the City and the order of the City to post a bond in the amount of $500,000. This Court is seriously concerned that the City by its actions today, by Mr. Officer's absence and Mr. Vickers' absence once again is showing, dare I say, its callous disregard for this Court's Orders, *and if the Court's Order can't get them here, perhaps the loss of money can.*" (Emphasis added.)

Finally, we note that the circuit court gave both Officer and Vickers the "keys to their cells," a necessary element in cases of civil contempt. The court ordered both to the county jail for six months or until they purged themselves by each posting a $3,500 bond. In our estimation, the bond was not a fine, but rather, a way to secure future compliance with the circuit court's injunction. The court's final statements at the April 14, 1989, hearing verify that the bond was to ensure Officer's and Vickers' presence at future hearings.

"Those of you will be disbanded up until January 9, 1989. At that time—January—June 9—sorry—June 9, 1989 at ten-thirty in this courthouse, probably this courtroom. I will set a review date for the Court to see if the injunction is being complied with, and I am ordering, as you all are present in front of me, all attorneys of record are ordered to appear in this cause, 89—CH—76, on Friday, June 9, 1989, ten-thirty, this courthouse,

Courtroom 9, to be present for this review that I'm hearing.

I'm also ordering, once again, Carl E. Officer, the Mayor of the City of East St. Louis, to appear on Friday, June 9, 1989 at ten-thirty in this courthouse in this courtroom for that particular review.

I'm further continuing my Order that any hearing which will be had on these—on this case, 89—Ch—76, should any party file a motion asking the Court for additional relief or to enforce the Court's previous Orders and if those are set for a hearing, Carl Officer, Mayor of East St. Louis, will be ordered to be at those hearings. So suffice it to say, your Honor, you are to be here at every hearing on this cause just as I ordered on March 3, 1989, and the Court will be in recess until that time and, gentlemen, if you're still in jail, we'll have the jailers bring you up here."

There are several additional references in the record that lead us to conclude that the circuit court's purpose in entering the contempt orders was to compel the City to clean up the sewage problem. The circuit court found the situation hazardous to the residents of the City and believed the only way to compel compliance with the injunction was to hold the City's chief executive officer responsible for the sewage problem. To this end, the circuit court demanded Officer's presence and the presence of all attorneys of record at the status hearings on the sewage matter. Based on our review of the proceedings, keeping in mind the essential elements and objectives of both types of contempt, we agree with the circuit court that both Officer's and Vickers' contempts were civil in nature. We move now to a discussion whether the contempts were direct or indirect.

■■ ■ Contumacious conduct constitutes direct contempt if it is committed in the physical presence of the judge or within an integral part of the court, while the court is performing its judicial functions. The judge must personally be aware of the contemptuous conduct so that no evidentiary hearing would be required to determine the facts establishing the conduct found to be of contemptuous character. (*People v. Javaras* (1972), 51 Ill. 2d 296, 281 N.E.2d 670.) Because the contumacious conduct is committed in the presence of the court, the contemnor may be adjudged and sanctioned in summary manner. (*City of Chicago v. Chicago Fire Fighters Union, Local No. 2* (1981), 99 Ill. App. 3d 583, 590, 425 N.E.2d 1071, 1076.) With a direct contempt situation, there need not be any specific showing of intent to be contumacious. The requisite intent becomes self-evident from the contumacious conduct itself. Therefore, only a general intent need be discerned. The intent may be inferred from the surrounding circum-

stances and also from the character of the action of the contemnor. *People v. Haas* (1981), 100 Ill. App. 3d 1143, 1148, 427 N.E.2d 853, 857; *People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 60, 364 N.E.2d 50, 52.

■ On the other hand, contumacious conduct constitutes indirect contempt if it is committed out of the presence of the judge and is, therefore, dependent for its proof upon extrinsic evidence of some kind or upon establishment of facts of which the court has no personal knowledge. (*Sunset Travel, Inc. v. Lovecchio* (1983), 113 Ill. App. 3d 669, 675, 447 N.E.2d 891, 895-96.) Under these circumstances, the law requires that the alleged contemnor be granted all due process rights so that he is given a reasonable opportunity to defend against the charge. *People v. Skar* (1964), 30 Ill. 2d 491, 494-95, 198 N.E.2d 101, 103.

■ The record in the instant case discloses that on March 30, 1989, Vickers attempted to have the following day's hearing continued. Initially, the judge granted Vickers' oral request over the telephone, but because she later concluded that Vickers had lied to her concerning the other parties' agreement to continue the hearing, she revoked the continuance and notified Vickers' office of the revocation. In addition, when Vickers called the judge and attempted to set up a conference call at approximately 5 p.m. on March 30, 1989, the judge succinctly told Vickers that both he and Officer were expected in court the next day at 10:30 a.m. Therefore, it was not Vickers' mere failure to appear in court which caused his being held in contempt, but his misrepresentation to the judge concerning the other parties' agreement to continue the hearing and his failure to obey the trial court's order on March 30, 1989, that he appear in court the following day. The judge's determination that Vickers had refused to abide by her order that he appear in court at 10:30 a.m. was based upon her own personal knowledge of the events that had transpired. She had been a participant in the conversations on March 30, 1989, concerning the continuance and was personally aware that Vickers had not appeared in court at 10:30 a.m. on March 31, 1989, as ordered. The judge was not in need of extrinsic evidence to reach her conclusion that Vickers was in contempt. Vickers' reason for not appearing at the hearing was not important, since the trial court let him know on the previous day that his appearance was expected, and no continuance would be granted no matter what his basis for requesting such a continuance. Thus, no evidentiary hearing was required to determine the facts establishing the conduct as contumacious in character. (*People v. Javaras* (1972), 51 Ill. 2d 296, 281 N.E.2d 670.) We find that

the trial court correctly characterized Vickers' contempt as direct and civil. Therefore, the trial judge could punish the offenders summarily without filing a petition, entering a rule to show cause, or granting a hearing. *People v. Skar* (1964), 30 Ill. 2d at 493, 198 N.E.2d at 102.

■■ The circuit court also characterized Officer's contumacious conduct as direct. However, after a review of the record, we find that the circuit court mischaracterized the contempt as direct rather than indirect. The circuit court's determination that Officer was in contempt was dependent upon its considering the truth or falsity of the evidence presented. The circuit court had no way of knowing why Officer was not present in court on March 31, 1989. The court also had no way of knowing what, if anything, Vickers had conveyed to Officer concerning his conversation with the court on March 30, 1989. However, the fact that the circuit court mischaracterized the contempt as direct rather than indirect does not mean that the finding of contempt must be vacated and the sanction revoked. Officer was granted all due process rights necessary to uphold the finding of contempt and the imposed sanctions. Officer was served with notice of the rule to show cause and was given the opportunity to respond to the petition. His attorney, Vickers, was present and available for representation. Officer was served with the petition on April 5, 1989, giving him sufficient opportunity to prepare for the April 14, 1989, hearing.

■■ Officer and Vickers also contend that they could not be found guilty of contempt because their inability to attend the March 31, 1989, hearing was not their own fault. An alleged contemnor cannot be held in contempt when he is unable to comply through no fault of his own. (*County of Cook v. Lloyd A. Fry Roofing Co.* (1974), 59 Ill. 2d 131, 137, 319 N.E.2d 472, 476.) While this is the general proposition of law cited by the *County of Cook* court, the court went on to state a corollary to this rule which prevents assertion of the defense of inability where the contemnor has voluntarily created the incapacity. 59 Ill. 2d at 137, 319 N.E.2d at 476.

■■ In Vickers' case, he called the judge on the day before the scheduled hearing to request a continuance due to his expected appearance in a St. Louis court on the following day. The judge initially granted his request, but later revoked it after learning that Vickers had misrepresented the other parties' agreement to continue the case. We are of the opinion that the record in the instant case sufficiently establishes that the defense of inability to comply with the conditions of the agreed order is not available to Vickers because it was his misrepresentations to the circuit court which prompted her to deny his continuance request. Vickers' response was to send his law partner,

Loretta Moore, to the hearing on the following day in order to request a continuance, even though Loretta Moore is not licensed to practice law in Illinois and apparently was not able to participate substantively in the hearing, or participate at all without leave of court for foreign counsel. The record further reflects she did not seek leave of court to participate in the hearing. This response to the circuit court order that Vickers appear in court was not sufficient. The finding of contempt was a matter to be determined by the circuit court, and it cannot be disturbed on this review unless the court was guilty of a clear abuse of discretion. (*Frank B. Hall & Co. v. Payseur* (1981), 99 Ill. App. 3d 857, 425 N.E.2d 1002.) Based upon the record before us, we find that the circuit court did not abuse its discretion by finding Vickers in contempt for failing to attend the March 31, 1989, hearing.

■■■ ■ As for Officer, it is apparent from the record that the circuit court did not believe his testimony concerning his inability to comply with the circuit court's order. Where an evaluation of credibility or the weight of the evidence was made by the circuit court, a court of review cannot substitute its judgment for that of the trier of fact unless the evidence is so unreasonable, improbable, or unsatisfactory as clearly to require a different conclusion. (*Sunset Travel, Inc. v. Lovecchio* (1983), 113 Ill. App. 3d 669, 678, 447 N.E.2d 891, 897-98.) Officer explained that on March 31, 1989, he was ill and was told by his doctor to remain in bed for three days. However, when questioned by the circuit court on April 14, 1989, of his whereabouts the three days following the March 31, 1989, hearing, Officer stated he could not remember without the benefit of his scheduling book. When the judge indicated she did not believe Officer, he said that he could bring witnesses in to verify his testimony. However, Officer did not have those witnesses at hand. On April 5, 1989, Officer was served notice that a petition for rule to show cause had been filed and was to be heard on April 14, 1989. He was given a full opportunity to explain his noncompliance on that date. After consideration of Officer's testimony, we cannot say that the circuit court erred in finding Officer in contempt, and we cannot say that he was denied due process of law.

We have previously addressed Officer's and Vickers' contention that the sanctions imposed by the circuit court were punitive, not coercive, thereby making the contempt actions criminal, not civil, and have found such contentions to be without merit. The remaining argument is raised by Vickers alone. Vickers contends that the circuit court's March 31, 1989, order requiring all subsequent motions to be verified was not sufficiently clear to prohibit the filing of an unveri-

fied letter so that any finding of contempt based on his letter to the judge is not sustainable. We agree.

● 14 The law requires that when a finding of contempt is based on the violation of an order of the court, it is necessary that the order's terms are set out with certainty, clarity, and conciseness. (*In re M.C.* (1980), 89 Ill. App. 3d 1130, 1131, 412 N.E.2d 709, 710.) In the instant case, the circuit court entered a verbal order at the Friday, March 31, 1989, hearing, which Vickers failed to attend, that stated: "By order of this Court any motion and all motions shall be verified, written and under oath." On Monday, April 3, 1989, Vickers arrived at the judge's chambers and attempted to hand-deliver a document in which he gave his version of the events surrounding his attempt to secure a continuance for the March 31, 1989, hearing. In this document, Vickers asked the judge to confirm his version of the events by investigating the facts and to ultimately issue a public apology for calling Vickers a liar. Vickers ended the document by stating that if he did not receive such an apology he would "be forced to take legal action." When Vickers attempted to hand-deliver the document to the judge, she asked him whether the contents involved a pending case. Although Vickers stated that it did not, the judge thought Vickers wavered in his response and refused to accept the envelope. She then directed Vickers to file the document in the proper court file. The judge read only the first and last paragraphs of the document and found that Vickers had made a request of the court—to publicly apologize to Vickers. The judge believed that the filing of this document violated her previous order requiring all motions to be verified and found Vickers in direct civil contempt.

■■ After reviewing the record, we believe that the circuit court's order that all motions be verified did not reasonably apprise Vickers that his filing this document would be considered contumacious conduct. In our opinion, this document was a personal letter written by Vickers. A motion, on the other hand, is an application for a rule or order. (*People v. Thomas* (1976), 34 Ill. App. 3d 1002, 1006, 341 N.E.2d 178, 182.) Vickers' letter did not ask the judge to issue a rule or order that would affect the pending litigation, but made a personal request of the judge. We find, therefore, that the filing of this letter did not constitute a violation of the circuit court's order requiring all motions to be verified, and any finding of contempt based on this order must necessarily be reversed. Since there was no additional sanction imposed for this violation, there is no sanction to vacate. Our finding does not require us to set aside the sanction requiring Vickers to post a $3,500 bond or to spend six months in the county jail, as

this sanction is clearly related to the order compelling attendance at court, discussed above, that we have affirmed.

 We note parenthetically that prior to this cause being set on the court's docket, appellants waived oral argument. Within 24 hours prior to this court's consideration of the appeal on a nonoral docket, appellants requested leave to present oral argument, which request appellees opposed on the basis of inadequate time for preparation. Given the late nature of the request and the reason for opposition, this court denied appellants' request for oral argument on that setting of the case.

For the foregoing reasons, the order of the circuit court of St. Clair County is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

RARICK, P.J., and HOWERTON, J., concur.