*In re* MARRIAGE OF RANDY GUSTAFSON, Petitioner-Appellant, and PAULA GUSTAFSON, Respondent-Appellee.

Fourth District   No. 4—89—0068

Opinion filed August 24, 1989.

Ronald E. Boyer, of Boyer & Thompson, Ltd., of Watseka, for appellant.

Frederic M. Grosser, of Grosser & Hays, of Champaign, for appellee.

JUSTICE LUND delivered the opinion of the court:

Petitioner Randy Gustafson filed a petition to transfer custody of his two minor daughters from respondent Paula Gustafson, n/k/a Paula Stone, to himself. The circuit court of Ford County denied the petition, and petitioner appeals.

Petitioner and respondent obtained a judgment for dissolution of marriage in June 1983. Under the terms of the dissolution, respondent was granted physical custody of the parties' two children. However, the marital settlement agreement stipulated that both parents were fit parents. Petitioner was granted reasonable visitation rights.

Respondent gave physical possession of the two children to her parents in August 1988. Since that time, she has not exercised her parental rights, and the children have remained in the care and control of the maternal grandparents, Robert and Mildred Helen Stone.

In September 1988, petitioner discovered the children had moved in with the Stones, and he filed his petition for change of custody. The grandparents filed a petition to intervene in the proceedings and obtain custody of the children, pursuant to section 601(b)(2) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1987, ch. 40, par. 601(b)(2)). The trial court denied the Stones' petition, and we affirmed. (*In re Marriage of Gustafson* (1989), 181 Ill. App. 3d 472, 536 N.E.2d 1359 (*Gustafson I*).) In that opinion, we held the grandparents did not have standing to seek custody of the children under section 601(b)(2) simply because they had been given physical possession by the custodial parent without the knowledge or consent of the noncustodial parent. Because even the noncustodial parent has a paramount right to the care, custody, and control of his children, a third party must provide more than just evidence of phys-

ical possession in order to show the children are "not in the physical custody of one of [their] parents." Ill. Rev. Stat. 1987, ch. 40, par. 601(b)(2).

On January 11, 1989, while the matter of the petition to intervene was pending in our court, the trial court held the hearing on the petition to change custody. A detailed review of the testimony from that hearing is necessary in order to resolve the issues in this case.

Petitioner called respondent as his first witness. She testified that the parties' two daughters are 12 and 7 years old. Since 1983, respondent exercised her custodial rights to the children, as stated in the marital settlement agreement. Petitioner faithfully paid child support and exercised his visitation rights. In August 1988, respondent gave the girls to the Stones. She testified she did not intend to leave them with her parents permanently, but just until she could financially support them again. However, she was impeached with certain statements she made at the hearing on the petition to intervene, which implied the change in living arrangements was meant to be permanent. She now admitted making those statements, but stated, "It was not what I meant." Respondent admitted that she had not been exercising any parental rights since August 1988, and that she had no plans at the present time to take her children back.

Later, during her case, respondent testified again. She explained that she lost her job in July 1988, and she could no longer financially care for her children. She gave the children to her parents "until [she] could get back on [her] feet again." As of the date of the hearing, she had found no other employment and had little hope of doing so. She was receiving unemployment compensation. She claimed to have regular contact with her children, as the Stones lived nearby.

On cross-examination, respondent admitted she was living with a man to whom she was not married. The child support payments paid by petitioner go directly to the Stones for the benefit of the children.

When petitioner testified, he stated he had regularly and consistently exercised his visitation rights since the divorce. However, he lost his job in September 1988, and he is currently receiving unemployment compensation. His child support payments were reduced because of the loss of his job. As soon as he learned the children had moved to the Stones on what appeared to be a permanent basis, he filed his motion for change of custody.

Petitioner admitted he was living with a woman without the benefit of marriage. His girlfriend is also divorced, and she has physical custody of her two children. Petitioner and his girlfriend are engaged

to be married, but they have not set a date. He owns a three-bedroom home. Because of savings and funds from a pension plan, he stated he would be able to financially support the children should the court transfer custody.

Mildred Stone testified for respondent. She stated that her daughter had not intended the living arrangement to be permanent. (This, of course, appears inconsistent with Stone's position in *Gustafson I*.) Mildred corroborated respondent's statement that it was only to continue until respondent regained some financial stability.

Respondent requested the court interview the children. The court declined to do so. Following that ruling, respondent requested further testimony from Mildred Stone concerning statements made by the children. The court allowed the testimony.

Mildred Stone testified, over objection, to several specific incidents which allegedly occurred while the children were with petitioner. She stated the children were locked out of the home on one occasion. On another occasion, the youngest child apparently saw her father naked. Mildred told of two more instances where the children were left alone at petitioner's home while petitioner went bar hopping. Mildred also stated the girls had problems relating to petitioner's girlfriend and her two daughters. They were afraid to voice their opinion to petitioner because they were afraid of receiving a beating. The girls told Mildred that petitioner drinks beer when he drives. The children did not want to leave their current home because of the friends they had made at school. Finally, Mildred mentioned the children had voiced their opinion that they do not want to live with petitioner.

On cross-examination, Mildred stated the girls never say anything good about visits with their father because "[t]here aren't any good things for them to talk about." Mildred stated she kept a diary which recorded the bad things the girls said about petitioner. Although Mildred stated the girls were afraid of being beaten, she had never seen any bruises to indicate a beating had taken place.

Petitioner testified in rebuttal to Mildred's testimony. He denied the incidents occurred that Mildred spoke about. He denied beating the children and threatening to beat the children. He did admit that there was some jealousy between his children and those of his girlfriend. He also admitted the children had stated a reluctance to live with him on a permanent basis.

The court denied the petition for change of custody. Based on the evidence, the court specifically found that respondent had "not surrendered custody of the children." The court found "[t]he mother

still exercises many elements of care, custody, and control" through her daily visits to the Stones' residence. Thus, the situation was not a dispute between petitioner and the Stones, but rather a "normal" custody dispute between the children's parents. The court found petitioner had shown a change of circumstances, as required by section 610 of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 610), but petitioner had failed in his burden to show a change of custody was in the best interest of the children. The court's judgment avoided any discussion of the hearsay testimony of Mildred Stone.

On appeal, petitioner argues: (1) the trial court's decision to allow the children to remain with the Stones effectively eliminated his paramount right as a parent to the care, custody, and control of his children; (2) the trial court's decision was contrary to the manifest weight of the evidence; and (3) reversible error occurred when the court admitted hearsay evidence of statements allegedly made by the children.

It took less than 65 pages to report the testimony portion of the July 11, 1989, hearing. Only four witnesses testified. The opinion in *Gustafson I* had not been filed.

■ We address only the alleged hearsay error. The trial court refused to interview the children. The following reason was given:

"The evidence as I understand it is closed. With respect to interviewing the children, I don't like to put the children in a position where they feel there is pressure put on them. That they are making a decision where they're in a position where they can be pressured by an adult and then have to worry about what adults are going to think about what they said in there, where they think they are responsible for the decision. I don't think that what they can contribute would be substantial compared to the drawbacks that would result from the pressure put on them in that situation. They've got to go on living with all of these people so I exercise my discretion and decline to interview the children."

The trial court's reasoning would be an argument for always refusing to examine children in custody disputes. The position is contrary to respected authority and ignores the elements to consider when deciding the propriety of having children testify. (*In re Cruz* (1979), 76 Ill. App. 3d 565, 568, 395 N.E.2d 388, 390.) Section 606 of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 606) gives courts adequate authority to protect the child witness.

■ Next, the court allowed the grandmother, Mildred Stone, to retake the witness stand and testify as to what the children *suppos-*

*edly* told her about the petitioner's conduct and living conditions. The trial judge recognized the hearsay nature of the testimony but allowed it over objection. Hearsay evidence of the children's preferences is allowed as an exception to the general rule. (*In re Marriage of Rizzo* (1981), 95 Ill. App. 3d 636, 642, 420 N.E.2d 555, 560.) However, this evidence should be limited to state of mind and emotional state. (See *In re Marriage of Sieck* (1979), 78 Ill. App. 3d 204, 218, 396 N.E.2d 1214, 1224.) We know of no exception to the hearsay rule which would allow most of the testimony given by Mildred Stone.

■■ Mildred Stone's testimony was damning to the petitioner and highly prejudicial. It was from a party who attempted to obtain legal custody and was rebuffed, as shown by *Gustafson I.* Her testimony in *Gustafson I*, as to her daughter's intentions, at least, appears to conflict with her testimony on January 11, 1989. The incentive to perjury was present. Reversible error exists.

This case involves the best interests of two young children. The importance of the ultimate decision requires a complete hearing. As indicated in *Gustafson I*, the facts surrounding the respondent's relationship and the children with the Stones is an important part of the evidence. The trier of fact must carefully weigh this relationship. As a result, we conclude petitioner's first two arguments should not now be considered on appeal.

This cause must be returned to the trial level for a completely new hearing. We are aware of the economic realities, but find this case is a proper one for a guardian *ad litem* for the children and home investigations by some suitable agency. Our opinion in *Gustafson I* must be given due consideration.

Reversed and remanded with directions.

SPITZ and GREEN, JJ., concur.