*In re* MARRIAGE OF ANDRIA ALICE DOTY, Petitioner and Counterrespondent-Appellee, and KENNETH ROY DOTY, Respondent and Counterpetitioner-Appellant.

Fifth District   No. 5—92—0027

Opinion filed February 2, 1994.

Vernon L. Plummer II, of Plummer & Plummer, of Shelbyville, for appellant.

Frederick P. Erickson and Christopher K. Bradley, both of Erickson, Davis, Murphy, Griffith & Walsh, Ltd., of Decatur, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Respondent-counterpetitioner, Kenneth Roy Doty (hereinafter respondent), appeals from a judgment of dissolution of marriage entered in the circuit court of Shelby County awarding petitioner-counterrespondent, Andria Alice Doty (hereinafter petitioner), custody of the parties' two minor children subject to visitation by respondent, the marital home, and other marital property. The trial court also found respondent to be in contempt of court for failing to comply with its order to refrain from unsupervised visits with his daughter. Respondent was sentenced to two days in the county jail and ordered to pay $250 in attorney fees. In this cause, respondent raises the following issues: (1) whether the trial court abused its discretion in refusing to interview the oldest child in order to assist in determining custody, (2) whether the trial court erred in not assigning a guardian *ad litem* to the children in determining custody, (3) whether the trial court's contempt findings and sentence violated respondent's right to due process, (4) whether the trial court abused its discretion in denying respondent custody and limiting his visitation, and (5) whether the trial court abused its discretion in distributing marital property and debts. We affirm in part and vacate in part.

## I

The parties married on July 3, 1980. It was petitioner's second

marriage and respondent's third. Two children were born of this marriage, a son, born July 30, 1981, and a daughter, born September 19, 1986. According to petitioner, problems arose in 1987 when respondent began to get "very negative about everything." Petitioner was affected by this and went to see a psychologist. Respondent went with her a few times; however, respondent began to believe that petitioner was having an affair. In fact, respondent alleged petitioner had numerous affairs. Soon the parties were separated, and on April 10, 1989, petitioner filed for dissolution of marriage.

When proceedings were initiated, petitioner was 37 years old and employed as a registered nurse at Decatur Memorial Medical Center. Petitioner earned $23,207 in 1989. Petitioner was employed outside the home throughout the parties' marriage. Respondent was 43 years old when the petition was filed and worked as a truck driver for ABF Trucking. Respondent had net earnings of $32,470.56 in 1989. He was unemployed during the early years of the parties' marriage. During most of the marriage petitioner took primary care of the children with assistance from baby-sitters. Early in the marriage, when respondent was unemployed, he took care of the parties' son.

To say that both parties were bitter about the divorce proceedings is to say the least. There were accusations of adultery, child sexual abuse, phone-tapping, and physical violence. The children were caught in the middle of all this. Before the dissolution hearing, a number of petitions, counter-petitions, and motions were filed. On May 12, 1989, petitioner filed for an order of protection. An interim order of protection was granted on May 26, 1989. A plenary order of protection was granted on July 16, 1989. The order protected petitioner and the parties' two children. It provided petitioner custody and possession of the marital home and set child support and limited visitation.

On September 1, 1989, respondent filed a two-count petition alleging violation of the visitation order and requesting a rule to show cause against petitioner. Respondent also sought to modify visitation. A hearing was set for September 7, 1989, but was continued until September 14, 1989, by agreement of the parties.

On September 8, 1989, petitioner became concerned that respondent was sexually abusing their daughter and called the Department of Children and Family Services (the Department) sexual abuse hotline, at which time she was referred to an organization called Growing Strong. Petitioner explained her concerns to representatives of that agency, who recommended she call her attorney and take her daughter to a pediatrician for an examination. Petitioner did take her daughter to see a pediatrician. The pediatrician filed a report with the

Department which prompted an investigation of respondent. On September 27, 1989, an order was entered by the trial court which provided that all further visitation between respondent and his daughter was to be in the presence of either respondent's sister, respondent's sister-in-law, or respondent's son.

On October 2, 1989, respondent filed a motion seeking a mental examination of petitioner and the children. Respondent alleged petitioner was mentally abusing the children and falsely accusing respondent of sexual abuse of his daughter. On October 13, 1989, the parties agreed that petitioner and the children would be examined by Dr. Boyd. Dr. Boyd found that petitioner was not mentally impaired.

On July 5, 1990, the trial court granted a dissolution of marriage. On September 13, 1990, a hearing on the remaining issues was held. Several witnesses testified on behalf of respondent, and several other witnesses testified on behalf of petitioner. Petitioner testified that her daughter made statements and acted in such a way that both petitioner and baby-sitters suspected respondent sexually abused her. Notwithstanding this testimony, the parties stipulated that the Department's investigation concluded that charges of sexual abuse against respondent were unfounded. There was testimony that the parties' son was having difficulty adjusting to the separation and divorce of his parents. His grades had suffered and he was easily upset. He had seen a school counselor in an attempt to help him deal with the stress. Respondent admitted to taking the parties' son to his attorney's office on three or four occasions to assist in this case. Respondent also admitted that videotapes were made of the children's visits with respondent and that videotapes were made at respondent's attorney's office. Respondent hired Ron Little, director of social services at Kemmerer Village, a residential treatment center for adolescents and children suffering from emotional and/or behavioral disorders, to evaluate his parenting skills. Little was hired in preparation for trial. Mr. Little met with respondent and the parties' two children on two separate occasions. Little opined that respondent is a competent parent with good communications skills. Respondent, Little, and respondent's attorney met with the son one week before the hearing, at which time the son stated he wanted to live with his father. Little agreed that putting a child in such a situation where he is asked who he wants to live with is not advisable, but he stated that divorce cases often require that this be done.

With regard to the contempt finding, the children's baby-sitter testified that she saw respondent and his daughter without accompaniment in respondent's car after the trial court had ordered respond-

ent to conduct his visits with his daughter while in the presence of others. Respondent himself admitted that he was alone with his daughter for two short periods of time although the trial court ordered him not to be.

With regard to the division of property, an appraisal of the marital home was admitted into evidence by stipulation of the parties. The marital home was appraised at $39,000. The value of other marital property, including a gun collection, was also stipulated to.

At the conclusion of the trial, the trial court declined an *in camera* interview with the children. The trial court believed the daughter would be too young for such an interview. As to the son, the trial court did not want a nine-year-old child to be burdened with the belief that he alone had made the decision about whether he would live with his mother or father and regret that choice later in life. The trial court also explained that he believed either one or both parents might ask their son the contents of the discussion with the court.

Ultimately, the trial court awarded custody of both children to petitioner. The trial court found both parents to be fit but found that the stresses of the marital breakup were handled poorly by respondent. The trial court stated in its judgment order that respondent directly involved his children in the middle of this dispute while petitioner attempted to shield the children from the stresses of the divorce proceedings. The trial court found respondent was paranoid and allowed this paranoia to affect his judgment. The trial court also found respondent to have used bad judgment in recording interviews with his children in which they discussed their feelings and relationship with petitioner, asking his son to choose sides in the dispute, and illegally wiretapping petitioner's telephone. The trial court found no evidence of adultery and further found that the allegations of sexual abuse were not supported by the evidence. The trial court also found the daughter's statements to be disturbing but "insufficient to justify the continuing restriction of supervised visitation." Respondent was ordered to undergo a psychological evaluation and follow-up counseling as well as to attend a parenting class.

Petitioner was awarded the marital home, which had equity of $12,100. Respondent was awarded his gun collection and became custodian of his son's guns. The other marital assets and marital debts were divided between the parties. Child support was awarded. Respondent was found in contempt, by his own admission, for failure to comply with the July 26, 1989, court order prohibiting unsupervised visitation with his daughter. He was sentenced to two days in the

county jail and ordered to pay $250 for petitioner's attorney fees in this matter. No other attorney fees were awarded.

## II

In this cause, the first issue we are asked to consider is whether the trial court abused its discretion in refusing to interview the parties' son to assist in determining custody. Respondent argues that the reasons given by the trial court for refusing to interview the son are inadequate and would always be a reason for a court to refuse to examine children in child custody disputes. (See *In re Marriage of Gustafson* (1989), 187 Ill. App. 3d 551, 543 N.E.2d 575.) Petitioner responds that the trial court properly exercised its discretion in awarding custody, and its decision not to conduct an *in camera* interview with the son was justified by the facts of this case. We agree with petitioner.

■ Section 604(a) of the Illinois Marriage and Dissolution of Marriage Act (the Act) authorizes the trial court in its discretion to interview a child in chambers in determining custody. (Ill. Rev. Stat. 1989, ch. 40, par. 604(a); *In re Marriage of Slavenas* (1985), 139 Ill. App. 3d 581, 585, 487 N.E.2d 739, 741; *In re Marriage of McKeever* (1983), 117 Ill. App. 3d 905, 908, 453 N.E.2d 1153, 1156.) "The statutory provision authorizing a court to interview a child as to his or her wishes regarding custody and visitation is clearly permissive." Ill. Ann. Stat., ch. 40, par. 604(a), Historical & Practice Notes, at 44 (Smith-Hurd 1992 Supp.).

■ Here, the trial court gave a detailed response to respondent's request for an *in camera* interview. In denying respondent's request, the trial court stated:

"The matter of an in camera interview with these children has been considered by this Court since the time this case was called and the evidence was first presented. The Court had no problem deciding it would not interview [the daughter] due to her tender age. With regard to [the son], *** this Court has heard extensive testimony over a three day period, testimony presented by both petitioner's witnesses and respondent's witnesses, witnesses who testified as to the relationship of the children with their parents, an expert who testified as to his observations of the children with the father and his conversations with the children. I have also heard testimony from the parties regarding their view of their relationship with their children and also their view of their relationship with the other parent and the children. I have also been privy this morning to

read excerpts from a diary the respondent has kept about numerous and frequent conversations with his son. I believe strongly [sic] and I had this opinion this morning when I came into Court but I wanted to keep an open mind because the respondent had not presented all of his evidence. I wanted to remain open to the idea of interviewing [the son]. But I believe this case has been fully and meticulously presented to this Court. I do not believe there is anything to be gained by an interview with [the son]. I still would not hesitate to do that interview except for the fact that I feel in the long run it may do more harm to [him] if he does appear before me with the attorneys or without them and relate certain matters to me. At some point in the very near future I am going to be called upon to make a decision based on the evidence in this case and award custody. Based upon the acrimony between the parties I think it is obvious to both and to their attorneys that any type of a joint or mutual custody arrangement is not workable. Therefore, this Court is going to have to make a decision and award permanent custody to one of these parties. And I do not believe that [the son] could add anything to my decision. He may state a preference and I would not be bound by that preference and I think I've had enough hard cold facts before me to make the appropriate decision. I do not want any decision I made to be on the conscience of a 9 year old boy and feeling that maybe something he said that he later regrets saying would affect his life and his parents' life and [his sister's] life. For those reasons and also the fact that I do not believe it is beyond the realm of possibility that either one of these parties could be inquisitive as to what [their son] said to me or asking about it of him. I do not think this child needs to be put under that pressure. For those reasons I am not going to grant the respondent's motion and not conduct an in camera interview with either of the children."

The record supports the trial court's finding that it would not be in the son's best interest to be interviewed *in camera*. Furthermore, there was evidence of the son's "preference" entered into evidence. Ron Little, who was hired by respondent for purposes of this litigation, testified that the son told him he wanted to live with his father. Under the circumstances presented here, we find no abuse of the trial court's discretion in refusing to interview the son.

Respondent argues that the instant case is analogous to *In re Marriage of Gustafson* (1989), 187 Ill. App. 3d 551, 543 N.E.2d 575,

where it was found to be in error to refuse to examine the children in a child custody dispute where the reason given for such refusal was that it unduly pressured the children in a situation where they would have to continue living with and seeing the people asking for custody. (*Gustafson*, 187 Ill. App. 3d at 555, 543 N.E.2d at 578.) However, *Gustafson* is distinguishable from the instant case because there the court was addressing hearsay evidence of the children's preference for a custodial parent which was admitted. The *Gustafson* court stated: "We address only the alleged hearsay error." (*Gustafson*, 187 Ill. App. 3d at 555, 543 N.E.2d at 578.) Moreover, it is clear that the decision to interview a child either in open court or *in camera* is clearly within the court's discretion, and under the facts presented here, we find no abuse of discretion.

The second issue raised by respondent is that the trial court erred in not appointing a guardian *ad litem* to the children in determining custody. We disagree.

■ Section 506 of the Act provides, in pertinent part:

"§506. Representation of Child. The court may appoint an attorney to represent the interests of a minor or dependent child with respect to his support, custody and visitation." (Ill. Rev. Stat. 1989, ch. 40, par. 506.)

Such an appointment is left to the sound discretion of the trial court. *In re Marriage of Stuckert* (1985), 138 Ill. App. 3d 788, 793, 486 N.E.2d 395, 398.

Here, we believe both children's best interests were adequately considered by the trial court. Numerous witnesses, including psychologists and therapists, testified concerning the children's best interests. The court also heard from the children's baby-sitters, family, friends, and neighbors. We cannot say under the facts of this case that the trial court abused its discretion in denying appointment of a guardian *ad litem* for the children.

### III

The third issue raised by respondent is whether the trial court's finding of contempt and sentence violated respondent's right to due process. Respondent contends that the finding of contempt for being in violation of the court order prohibiting respondent from unsupervised visits with his daughter was a finding of indirect criminal contempt. Because the contempt finding was rendered in the absence of procedural safeguards afforded in criminal proceedings, it was in error and must be reversed. Petitioner responds that respondent was sufficiently warned about the implications of violating the plenary or-

der of protection, which is what petitioner alleged in her rule to show cause. The order of protection itself specifically stated that a violation of the order could result in a fine or imprisonment. Moreover, petitioner argues that because respondent failed to assert any due process violations in the trial court, such assertions are waived.

In the present case, three petitions for rule to show cause were presented by petitioner. We are concerned only with the trial court's finding that respondent was in "wilful and contumacious contempt" of the trial court's order requiring all of respondent's visits with his daughter to be conducted in the presence of another, namely, in the presence of either respondent's sister, his sister-in-law, or his son. Respondent was found guilty of violating the order. The trial court specifically stated that its determination of violation was based upon respondent's "admitting he was alone with [his daughter] on at least two specific occasions." The trial court never categorized the type of contempt of which respondent was found guilty. Respondent was sentenced to two consecutive days in the Shelby County jail and ordered to pay petitioner's reasonable attorney fees of $250. Respondent filed a motion for rehearing, retrial, or vacation of judgment in which he raised the argument that his due process rights were violated by the trial court's findings of contempt. Therefore, we cannot agree that respondent waived this argument. In order to properly address this issue, we first must determine the type of contempt involved.

Criminal contempt consists of acts tending to lessen the dignity or impede the process of the court, and such proceedings are instituted to vindicate the court's authority. Sanctions for criminal contempt are punitive in nature. Conversely, civil contempt generally consists of failing to do something ordered by a court, and the result is a loss of benefit or advantage to the opposing party with the dignity of the court being only incidentally involved. (*People v. City of East St. Louis* (1990), 206 Ill. App. 3d 626, 634, 564 N.E.2d 1372, 1377.) "Criminal sanctions are retrospective in nature; they seek to punish a contemnor for past acts which he cannot now undo. Civil sanctions are prospective in nature; they seek to coerce compliance at some point in the future." (Emphasis omitted.) (*In re Marriage of Betts* (1990), 200 Ill. App. 3d 26, 46, 558 N.E.2d 404, 417.) "It is civil contempt that is defined by the phrase that the contemnor 'has the keys to the cell in his own hands.' That means that the contempt finding should give the contemnor the ability to purge at any time." (*In re Marriage of Morse* (1993), 240 Ill. App. 3d 296, 302, 607 N.E.2d 632, 637.) "Contempt may be further classified as either direct or indirect depending upon whether the contemptuous conduct occurr[ed] within

or outside the presence of the court." *City of East St. Louis,* 206 Ill. App. 3d at 634, 564 N.E.2d at 1378.

In the instant case it is clear that there were no purging provisions in the order and the conduct occurred outside the presence of the court. Therefore, the contempt is properly classified as indirect criminal contempt. The process due individuals in civil contempt proceedings is different from that which must be given to an individual charged with criminal contempt. *(Betts,* 200 Ill. App. 3d at 52, 558 N.E.2d at 421.) In civil contempt proceedings, the contemnor is entitled to minimal due process, which consists of notice and an opportunity to be heard. *(Betts,* 200 Ill. App. 3d at 53, 558 N.E.2d at 421.) On the other hand, in a criminal contempt proceeding, the contemnor is entitled to the privilege against self-incrimination, the presumption of innocence, and the right to be proved guilty beyond a reasonable doubt. *In re Marriage of Ruchala* (1991), 208 Ill. App. 3d 971, 978, 567 N.E.2d 725, 730.

■ In the present case, it is clear that respondent was not aware that he might be found in criminal contempt. The proceedings initiated by petitioner were "rules to show cause." In such a situation, respondent was required to "show cause" why he was not in contempt. In a criminal contempt proceeding that is an impermissible shifting of the burden. *(In re Marriage of Cummings* (1991), 222 Ill. App. 3d 943, 948, 584 N.E.2d 900, 903.) Petitioner argues that there was notice on the plenary order alerting respondent that if he was found guilty of violating the order, he was subject to imprisonment and a fine. We, however, find such language insufficient to meet the requirements of due process. Overall, the record shows that the parties were confused about the nature of the contempt. Because the procedural safeguards required in cases involving indirect criminal contempt were not followed, the finding of contempt was in error and respondent's contempt conviction must be vacated. Respondent should be reimbursed $250 by petitioner for attorney fees he was wrongly ordered to pay.

## IV

The next issue we are asked to consider is whether the trial court abused its discretion in denying respondent custody and limiting his visitation. Respondent contends that the trial court's award of custody to petitioner and the limitations placed on respondent in requiring him to undergo mental health evaluations and parenting classes were against the manifest weight of the evidence since respondent

was found to be a fit parent and petitioner's allegations of sexual abuse were unfounded. We disagree.

In child custody cases, there is a strong and compelling presumption in favor of the result reached by the trial court because the trial court is in a superior position to evaluate the evidence and determine the best interests of the children. The trial court's decision will be reversed only if it is contrary to the manifest weight of the evidence. *In re Marriage of Simmons* (1991), 221 Ill. App. 3d 89, 581 N.E.2d 716.

■ We cannot agree that the trial court's determinations with regard to custody and visitation were against the manifest weight of the evidence. By all accounts, these were messy and explosive proceedings. Both parties had their share of inappropriate conduct. The trial court's determination, however, shows that it believed respondent was the greater offender. The trial court found respondent to be a fit parent who obviously loved his children, but it was uncomfortable with the idea of giving him custody. There are many factors supporting the trial court's decision, but what is most compelling is that respondent is a truck driver who is regularly out of town on the road. Moreover, given the fact that these were not amicable proceedings, it would have been ill-advised to give petitioner and respondent joint custody. Additionally, we cannot say that the trial court abused its discretion in ordering respondent to sharpen his parenting skills. Overall, the record supports the trial court's determinations, and we find nothing to indicate that the trial court abused its discretion.

## V

The final issue we are asked to consider is whether the trial court abused its discretion in distributing the marital property and debts. Respondent asserts that petitioner was awarded 78% of the parties' marital assets, which was an abuse of discretion given the fact that petitioner was the only party awarded nonmarital assets and that respondent was ordered to pay approximately $9,100 per year in child support. Respondent contends he should have retained some ownership in the marital home, the parties' major marital asset, for eventual distribution at their daughter's emancipation. Petitioner responds that the distribution of property and debts was appropriate given the fact that petitioner was awarded custody and that respondent's income was substantially greater than hers. We agree with petitioner.

The division of marital property must be in "just proportions" after consideration of "all relevant factors." (Ill. Rev. Stat. 1989, ch. 40, par. 503(d).) Section 503(d) sets out 11 factors which should be considered by the trial court in making its determination. The division

of marital property in just proportions does not mean that the property must be divided in mathematical equality, and an unequal distribution may be made if a court has properly applied the statute. *In re Marriage of Drone* (1991), 217 Ill. App. 3d 758, 765, 577 N.E.2d 926, 931.

In the present case, the judgment states: "this court has considered all factors deemed relevant under Ill. Rev. Stat. Ch. 40, par. 503." The trial court was well aware of the proper statute to apply and the factors to be considered.

■ In a similar case, *In re Marriage of Zummo* (1988), 167 Ill. App. 3d 566, 521 N.E.2d 621, our colleagues in the fourth district found that there was no abuse of discretion in the trial court's award to the wife of more than 50% of the value of marital assets, where the majority of the estate was deemed to be in the house which was justifiably awarded to the wife and where the husband was likely to earn more money than the wife. (*Zummo*, 167 Ill. App. 3d at 577, 521 N.E.2d at 627.) We, too, find compelling the fact that petitioner was awarded custody and the fact that petitioner makes substantially less money than respondent. Under the facts of the present case, we cannot say that the trial court exceeded the bounds of reason so that no reasonable person would take the view adopted by the trial court with regard to the division of the marital estate. *In re Marriage of Siddens* (1992), 225 Ill. App. 3d 496, 500, 588 N.E.2d 321, 324.

For the foregoing reasons, the judgment of the circuit court of Shelby County is affirmed in all respects, except for the finding of contempt, which we hereby vacate.

*Affirmed in part; vacated in part.*

LEWIS, P.J., and RARICK, J., concur.