**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 190572-U

Order filed June 16, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| *In re* MARRIAGE OF HANY SAYED ABUTALEB, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Petitioner-Appellant, | ) ) | |
| and | ) ) | Appeal No. 3-19-0572 Circuit No. 16-D-834 |
| | ) | |
| MONA MOHAMED ABUTALEB, | ) ) | The Honorable Domenica A. Osterberger, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE LYTTON delivered the judgment of the court.
Justices O'Brien and Wright concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   Trial court did not abuse its discretion in awarding wife 75% of husband's 401(k) account where parties had few marital assets, wife did not work outside the home throughout 26-year marriage, and husband had significant nonmarital assets and greater earning potential.

¶ 2     Petitioner Hany Abutaleb and respondent Mona Abutaleb were married in 1994. In 2016, Hany filed a petition for dissolution of marriage. In 2019, the trial court entered a judgment for dissolution of marriage. Pursuant to the judgment, Hany was ordered to pay the majority of the marital debts, each party was awarded one-half of the marital property located in Egypt, and

Mona was awarded 75% of Hany's 401(k) account. Hany appeals, arguing that the trial court erred in awarding Mona a majority of his 401(k) account. We affirm.

¶ 3                                                    FACTS

¶ 4        Hany and Mona Abutaleb were married in Egypt in 1994. They moved to the United States in 1997. They had four children together: Ab.A., born in 1998; O.A., born in 2000; S.A., born in 2002; and Al.A., born in 2004. In 2005, Hany became employed as an engineer for Caterpillar.

¶ 5        In May 2016, Hany filed a petition for dissolution of marriage in circuit court in Will County in case number 16-D-834. According to the petition, Hany was 48 years old at the time, and Mona was 44 years old. Hany still worked as an engineer for Caterpillar, and Mona was not employed outside of the home.

¶ 6        In August 2016, the trial court entered an order requiring Hany to pay the mortgage and household expenses on the marital home and pay Mona $2,000 per month for expenses for her and the children. The court also ordered that the parties not dispose of any marital property without court approval. Hany stopped paying the mortgage on the marital home in September 2017.

¶ 7        Mona filed a counter-petition for dissolution of marriage in February 2018. In June 2018, Hany filed a motion to dismiss the dissolution proceeding, asserting that Mona had previously obtained a divorce from an Egyptian court. In August 2018, a foreclosure proceeding was filed in circuit court in case number 18-CH-1338 for the parties' marital home. In September 2018, the trial court granted Hany's motion to dismiss the dissolution proceeding in case number 16-D-834 on comity principles. Mona appealed that decision. After the dismissal of the dissolution proceeding, Hany stopped making payments to Mona.

¶ 8    In December 2018, while Mona's appeal was pending, Mona filed a new action in circuit court, in case number 18-D-2189, seeking to enroll the Egyptian divorce decree. In February 2019, the trial court granted Mona's petition to enroll. In March 2019, the trial court ordered Hany to pay monthly child support of $930 and maintenance of $2512.17. Hany filed a motion to reduce his maintenance and child support obligations, which is still pending. In March 2019, a judgment of foreclosure and sale was entered in case number 18-CH-1338. In July 2019, an order confirming the Sheriff's sale of the marital home was entered. A deficiency judgment was entered against Hany in the amount of $15,849.73 in case number 18-CH-1388.

¶ 9    Also, in July 2019, we issued our decision reversing the trial court's dismissal of the dissolution proceedings in case number 16-D-834 and remanded the case to the trial court to resume dissolution proceedings. *In re Marriage of Abutaleb*, 2019 IL App (3d) 180559-U. In August 2019, following a hearing, the trial court allowed counsel for both parties to withdraw. Both parties proceeded *pro se* at a three-day hearing in late August 2019.

¶ 10    The evidence at the hearing established that Hany has worked as an engineer at Caterpillar since 2005. In 2016, his gross income was $160,000. In 2018, Hany relocated to Arizona through Caterpillar. Hany contributes to his 401(k) account, and Caterpillar provides matching funds. Hany took a $10,000 loan from his 401(k) account during the dissolution proceedings. He has since paid back the majority of the loan, but he still owed approximately $4,000 at the time of the hearing. Mona testified that the value of Hany's 401(k) account was $261,000 at the time of the hearing.

¶ 11    The parties' oldest son, Ab.A. is disabled and lives in a group home in Illinois. Hany is his guardian. The parties' second oldest child, O.A., is attending college in Arizona and lives with Hany. Hany testified that he pays for O.A.'s tuition and expenses. Mona testified that O.A.

has student loans. The parties' two youngest children, S.A. and Al.A., live in Illinois with Mona and attend high school.

¶ 12        Mona has a degree in commerce. She has never worked outside the home. At the time of the hearing, she was 49 years old. Mona, S.A. and Al.A. continued to reside in the marital home at the time of the hearing. Hany continued to pay for utilities for the marital home but did not do so consistently. Hany also paid for cell phones for himself, Mona and each of the children.

¶ 13        Hany has three vehicles in his name: a 2004 Chrysler Town & Country that O.A. drives in Arizona, a 2015 Nissan Rogue that Mona drives, and a 2017 Mercedes that he drives. The 2004 Chrysler has no loan and, according to Hany, has a value of approximately $500. The outstanding loan for the Nissan Rogue is $5,661, and the monthly payment is $399. Mona has never made any payments on the vehicle. Hany stopped making payments on the vehicle in September 2018. Hany obtained the Mercedes in September 2017, after making a $5,000 down payment from funds he received from his brother. His monthly payment for the Mercedes is almost $1,000. Hany still owes $40,203 on that vehicle. Hany pays car insurance for all three vehicles. Mona has one vehicle in her name, a 2007 Matrix. The vehicle is in Egypt and has a value of approximately $9,000. She reported the vehicle stolen when she traveled to Egypt and found that it was not where she left it.

¶ 14        The parties own several properties in Egypt. In 1991, before the parties' marriage, Hany purchased property in Orabi for approximately $50,000. In 1992 and 1993, Hany made improvements to the property. Mona testified that Hany transferred the Orabi property to her in 2009. Hany disputes that, claiming that Mona fraudulently transferred the property to herself. In 2016, Hany sold the Orabi property to his brother for $5,000, which Hany admitted was not the property's fair market value. Hany testified that he sold the property to his brother with the

understanding that if he needs financial assistance, he can ask his brother. Hany estimated that the value of the Orabi property is approximately $1.2 million. Hany's brother sold the Orabi property in 2017 for approximately $733,590. Hany also owns property in Alexandria that he obtained prior to marriage. That property has a value of $60,000 to $70,0000.

¶ 15    The parties purchased an apartment in Asala/Giza in 1995. Mona valued it at approximately $40,000. They also purchased an apartment in Marwa in 2002, which Mona estimated is worth approximately $40,000. In 2002, Hany and Mona purchased an apartment in Al Rehab for 221,300 Egyptian pounds. In 2008, Hany sold the Al Rehab apartment to his uncle for 100,000 Egyptian pounds. In 2007, the parties purchased a villa in Al Rehab for 13,294,451 Egyptian pounds. In 2008, Hany sold the Al Rehab villa for 200,000 Egyptian pounds. Mona disputed that the transfer of the Al Rehab villa was valid.

¶ 16    Hany testified that he and his family owned an apartment in Dokki prior to his marriage to Mona. Hany claimed that property was sold in 2006, and the proceeds of the sale were placed in a bank account owned by Mona. Hany claims that Mona converted those funds for her own use, and he instituted an action against Mona in Egypt to attempt to recover the funds. Both parties testified that they had no bank accounts in Egypt.

¶ 17    Each party presented evidence regarding credit card debt. Mona testified that she has an American Express credit card with a balance of $10,025.27. She testified that she used that credit card for household expenses during the dissolution proceedings. Hany presented evidence of the balances of several credit cards in his name, totaling $38,080.92.

¶ 18    In September 2019, the trial court entered a judgment for dissolution of marriage. With respect to the real property located in Egypt, the trial court found that it had "insufficient information to distribute" the Al Rehab apartment, the Al Rehab villa, and the Asala/Giza

apartment. The court found the Marwa property to be marital property and awarded one half to each party. Regarding the Orabi property, the court found it had "insufficient information to characterize or distribute any interest in the property as marital or nonmarital" but found that "at a minimum, Hany has a significant source of income from the property."

¶ 19    With respect to the vehicles, the trial court awarded Mona the Chrysler and Nissan, including the debt of $5,661 on the Nissan. The court also awarded Mona the Matrix in Egypt, if located, and/or any insurance she receives as a result of its alleged theft. The court awarded Hany the Mercedes, including the debt of $40,203 on that vehicle.

¶ 20    The court awarded each party the personal property in their possession, as well as the bank accounts in each of their names. The court awarded Mona 75% of the value of Hany's 401(k) account as of the date of the dissolution judgment and assigned Hany the loan debt on the IRA account.

¶ 21    The court assigned Mona the debt for the water, sewer, electric, internet, cable and gas bills for the marital home and ordered Hany to transfer those bills to Mona's name. The court ordered Hany to pay Mona's credit card debt of $10,025.27, as well as his own credit card debt of $38,080.92. The court also assigned Hany the debt for phone services but stated that Hany was not obligated to maintain phone service for Mona, the children or the marital home. Finally, the court assigned the deficiency judgment of $15,849.73 on the marital home to Hany, finding that he "willfully failed to pay the mortgage and take all necessary steps to potentially modify the same as ordered by the Court."

¶ 22    The court held that because of the geographical distance between the parties, Mona is the "*de facto* primary caregiver for the minor children." The court, therefore, awarded all parenting time for the two minor children to Mona and ordered that Hany be granted parenting time by

6

agreement of the parties. The court ordered that the parties "equally share decision-making as to education, religion, extra-curricular activities, and health." The court declined to address any child support or maintenance issues, stating that "such matters have been, and therefore must be, addressed in 18[-]D[-]2189."

¶ 23                                                  ANALYSIS

¶ 24        Hany argues that the trial court abused its discretion in awarding Mona 75% of the value of his 401(k) account, particularly in light of the substantial debt he was assigned in the dissolution judgment. He also contends that the trial court erred in considering the value of the Orabi land in its distribution of marital assets.

¶ 25        Pension and 401(k) benefits earned during marriage are marital property. *In re Marriage of Hamilton*, 2019 IL App (5th) 170295, ¶ 91; *In re Marriage of Smith*, 2012 IL App (2d) 110522,     ¶ 72. Section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Act) provides that marital property shall be divided in "just proportions" considering all relevant factors. 750 ILCS 5/503(d) (West 2018). Section 503(d) of the Act sets forth the following 12 factors that the trial court should consider in making its determination:

> "(1) each party's contribution to the acquisition, preservation, or increase or decrease in value of the marital or non-marital property, including * * * the contribution of a spouse as a homemaker or to the family unit;
>
> (2) the dissipation by each party of the marital or non-marital property * * *;
>
> (3) the value of the property assigned to each spouse;
>
> (4) the duration of the marriage;
>
> (5) the relevant circumstances of each spouse when the division of property is to become effective * * *;

7

* * *

(8) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

(9) the custodial provisions for any children;

(10) whether the apportionment is in lieu of or in addition to maintenance;

(11) the reasonable opportunity of each spouse for future acquisition of capital assets and income; and

(12) the tax consequences of the property division upon the respective economic circumstances of the parties." *Id.*

¶ 26 "The touchstone of apportionment of marital property is whether the distribution is equitable in nature." *In re Marriage of Schmidt,* 242 Ill.App.3d 961, 966 (1993). Mathematical equality is not required, as Illinois law holds that the term "just proportions" does not necessarily mean equal amounts. *Id.*; see *In re Marriage of Doty*, 255 Ill. App. 3d 1087, 1097-98 (1994) (proportional asset division does not require equal division).

¶ 27 A trial court's decision on the ultimate distribution of marital property lies within the sound discretion of the trial court and will be reversed only for an abuse of discretion. *In re Marriage of Polsky,* 387 Ill.App.3d 126, 135 (2008). An abuse of discretion occurs only if the record shows the trial court acted arbitrarily without employing conscientious judgment, or, if in view of all circumstances of the case, the trial court exceeded the bounds of reason so that no reasonable person would take the trial court's view. *In re Marriage of Siddens,* 225 Ill.App.3d 496, 500 (1992).

¶ 28 In dividing marital property, the trial court may consider each party's ownership of nonmarital assets. See *In re Marriage of Joynt*, 375 Ill. App. 3d 817, 822 (2007). "[A] trial court

8

is justified in awarding almost all of the marital property to one spouse if the other spouse has substantial nonmarital assets." *In re Marriage of Gattone*, 317 Ill. App. 3d 346, 355 (2000); see *In re Marriage of Holman*, 122 Ill. App. 3d 1001, 1011 (2000) (finding that wife's significant nonmarital property justified court's award of majority of marital property to husband). This is particularly true when the spouse with significant nonmarital assets also has a higher income and greater earning potential. See *Joynt*, 375 Ill. App. 3d at 822; see also *In re Marriage of Stephenson*, 121 Ill. App. 3d 698, 699 (1983) (holding that trial court properly granted 75% of marital estate to wife where husband had substantial nonmarital assets and "vastly greater opportunity for the future acquisition of assets and income").

¶ 29        Additionally, granting one party substantially more marital property than the other is not an abuse of discretion where the party receiving the majority of assets has been unemployed for much of the parties' lengthy marriage and has less earning potential. See *In re Marriage of Orlando*, 218 Ill. App. 3d 312, 320-21 (1991) (awarding wife two-thirds of marital estate was warranted where marriage was 46 years long, wife did not work for most of marriage and her income was much less than husband's); see also *In re Marriage of Madoch*, 212 Ill. App. 3d 1007, 1016 (1991) (increasing wife's share of marital estate to 75% where wife had limited employability and sources of income compared to husband); *In re Marriage of Gentry*, 188 Ill. App. 3d 372, 375-76 (1989) (finding no abuse of discretion in court's award of 66% of assets to wife who had been a homemaker for nearly 20 years); *In re Marriage of Agazim*, 176 Ill. App. 3d 225, 232 (1988) (upholding 76/24 division of assets in favor of wife where husband was principal wage earner throughout the marriage and wife's wage earning capacity was significantly less than husband's); *In re Marriage of Hanson*, 170 Ill. App. 3d 298, 303 (1988) (affirming 70/30 division of assets in favor of 49-year-old wife after a 28-year marriage, where

wife had no employment experience in over 20 years); *In re Marriage of McNeeley*, 117 Ill. App. 3d 320, 326 (1983) (finding no abuse of discretion where trial court awarded approximately 60% of assets to 53-year-old wife who did not work outside the home throughout 32-year marriage).

¶ 30        Here, at the time of dissolution, the parties had a great deal of marital debt and few marital assets. The court ordered Hany to pay the majority of the parties' debt and awarded Mona a majority of the marital assets, including three of the four vehicles, one half of the Marwa property, and 75% of Hany's 401(k) account. In making its distribution, the trial court noted that Hany had "a significant source of income from the [Orabi] property."

¶ 31        Based on the facts and circumstances presented in this case, the trial court's distribution of marital property, including Hany's 401(k) account, was equitable. The evidence established that Hany has been the sole breadwinner for his family since he and Mona married in 1994. He is currently earning at least $160,000 per year, while Mona has no income and never worked outside the home during her 26-year-marriage to Hany. While Mona has a degree in commerce, her earning capacity as a 49-year-old who has been out of the labor market for more than 20 years is much lower than Hany's. Additionally, Hany has significant nonmarital property, including the proceeds from the sale of the Orabi property, as well as other real estate in Egypt. In light of these facts, the trial court's decision to award Mona 75% of the value of Hany's 401(k) account at the time the dissolution judgment was entered was not an abuse of discretion.

¶ 32                                        CONCLUSION

¶ 33        The judgment of the circuit court of Will County is affirmed.

¶ 34        Affirmed.

10