*In re* MARRIAGE OF BARBARA SLINGERLAND, Petitioner-Appellant, and JOHNATHAN SLINGERLAND, Respondent (The People of the State of Illinois, Appellee).

Second District    No. 2—03—0714

Opinion filed April 8, 2004.

Peter B. Nolte, of Sreenan & Cain, P.C., of Rockford, for appellant.

Deborah E. Ellis, State's Attorney, of Oregon (Lawrence M. Bauer and Terry A. Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Petitioner, Barbara Slingerland, appeals the trial court's order finding her in direct criminal contempt of court. She argues that her behavior constituted, at most, indirect criminal contempt. We disagree and affirm.

The marriage of petitioner and respondent, Johnathan Slingerland, was dissolved in January 2001. In July 2002, respondent requested that petitioner be held in indirect civil contempt for violating various provisions of the dissolution judgment. Petitioner filed a response to the pleading as well as additional petitions. In December 2002, respondent moved to terminate maintenance. A hearing on these issues began on December 18, 2002, and continued on February 26, 2003. Both petitioner and respondent are attorneys and appeared *pro se*. At the latter hearing, while respondent was testifying in rebuttal about days that petitioner allegedly denied him visitation with their children, the following exchange took place:

"MRS. SLINGERLAND: Objection, there's no petition on file with regard to this. Now we're talking about days that we don't even have petitions on file for.

THE COURT: Ms. Slingerland, it took awhile to get to court. I'm not going to go into whose fault it was or wasn't that we got to court. Since this is subsequent to his filing of the petition, I am going to let him introduce anything until today's date. So, if this has been an ongoing activity, you may testify, Mr. Slingerland.

MRS. SLINGERLAND: That's it.

THE COURT: Mrs. Slingerland, sit down.

MRS. SLINGERLAND: No, I'm not going to. This is totally unfair.

THE COURT: Mrs. Slingerland—

MRS. SLINGERLAND: No, it's not fair.

THE COURT: Bailiff, would you keep Mrs. Slingerland? Mrs. Slingerland, ma'am, we're going to continue with this hearing.

MRS. SLINGERLAND: I'm not even prepared for any of this.

THE COURT: Mrs. Slingerland, have a seat there. Mrs. Slingerland, come forward. You want to go sit in the jail, Mrs. Slingerland?

MRS. SLINGERLAND: Yeah, I'm tired, I've had it with everything that these judges do.

THE COURT: Mrs. Slingerland, come forward.

MRS. SLINGERLAND: This is not fair. Nothing has ever been fair in this case. I have had it up to here. No.

THE COURT: Mrs. Slingerland, I want you to come forward, please.

MRS. SLINGERLAND: You don't know what I've been through in this case, Judge.

THE COURT: Mrs. Slingerland, come forward.

MRS. SLINGERLAND: You don't know what I've been through with him after 20 years. Read his psychological report. He's a control freak and a jerk and then I have had to deal with Judge Pemberton and now, I can't, I don't trust any of you people. I don't trust you and I have good reasons not to trust you.

THE COURT: Mrs. Slingerland, this is a court of law. You are an attorney. You're licensed to practice law in the State of Illinois. You know what you—

MRS. SLINGERLAND: This is my kids. This is my life.

THE COURT: I have five children of my own. I understand parenthood. All right. We're going to do this by the rules. Now, if you, I've started this proceeding, I'm going to finish this. If you wish to sit there in that chair and hear what Mr. Slingerland has to say, I suggest you do it. I'm not going to allow you to have any more demonstrations. At that point I'm going to either kick you out or hold you in contempt.

MRS. SLINGERLAND: I would rather be out. Nothing fair is ever going to happen here.

THE COURT: Mrs. Slingerland, we're going to finish this today. I would strongly recommend that you sit in court. We're not going to continue this. If you wish to have a couple minutes to compose yourself—

MRS. SLINGERLAND: I will.

THE COURT: We'll recess for five minutes.

(At which time recess was held)

THE COURT: Mr. Slingerland, you may get back on the stand. We're back on the record. We've been gone about 10, 15 minutes. Bailiff, is Ms. Slingerland here?

BAILIFF BROOKS: She's in the parking lot, sir. You want me to go get her?

* * *

BAILIFF BROOKS: She took off.

* * *

THE COURT: Okay, for the record we should show that Ms. Slingerland, after confrontation in court we gave her ten minutes to compose herself, she left. At this point even though she's not present, Mr. Slingerland, I am going to let you as briefly as you can finish up your case in chief and that way I'll have everything, and what I'm going to do with Mrs. Slingerland remains to be seen."

On April 23, 2003, the trial court entered an order finding petitioner in direct criminal contempt of court for "her conduct at the February 26, 2003 hearing." Before sentencing petitioner, the trial court asked her why she had left the hearing. Petitioner replied that she was upset because she felt that the proceedings had been unfair, and she thought her presence was superfluous. The trial court sentenced petitioner to seven days' imprisonment. Petitioner timely appealed, and this court granted her motion to stay the sentence during the appeal.

■ On appeal, petitioner argues that her failure to return after the recess was not punishable as direct criminal contempt. Contempt can be either civil or criminal and either direct or indirect. A civil contempt sanction is coercive and seeks to compel future compliance with a court order, whereas a criminal contempt sanction punishes a party for past conduct. *People v. Warren*, 173 Ill. 2d 348, 368 (1996). Criminal contempt is conduct that is calculated to embarrass or obstruct a court in the administration of justice or lessen the court's authority or dignity. *In re Marriage of Oleksy*, 337 Ill. App. 3d 946, 949 (2003). Before citing an individual with criminal contempt, the judge must find that the contemptuous conduct was willful. *People v. Smeathers*,

297 Ill. App. 3d 711, 717 (1998). A contemptuous state of mind may be inferred from the conduct itself and the surrounding circumstances. *Smeathers*, 297 Ill. App. 3d at 717. Petitioner does not dispute that only criminal contempt is at issue in this case, but argues that her conduct constituted, at most, indirect criminal contempt.

■ Indirect contempt arises from conduct that occurred outside of the judge's presence (*In re Marriage of Ruchala*, 208 Ill. App. 3d 971, 977 (1991)), whereas direct contempt arises from conduct that occurred in the judge's presence, making all elements of the offense within the judge's personal knowledge (*People v. Simac*, 161 Ill. 2d 297, 306 (1994)). While a trial court can punish direct contempt summarily, indirect contempt requires the due process rights of notice, opportunity to answer, and a hearing. *People v. Kaeding*, 239 Ill. App. 3d 851, 854 (1993). However, if the acts constituting indirect contempt are admitted to in open court, the conduct is punishable as direct contempt. *In re Marriage of Marshall*, 278 Ill. App. 3d 1071, 1081 (1996). We will not reverse the trial court's finding of direct criminal contempt unless there is insufficient evidence to support the finding or the trial judge considered facts outside of his personal knowledge. *Simac*, 161 Ill. 2d at 306.

Petitioner cites *People v. L.A.S.*, 111 Ill. 2d 539 (1986). In that case, the trial court commenced a hearing to revoke the probation of the respondent, a minor. After the State presented its case, the court recessed for 10 minutes. When the proceedings reconvened, the respondent did not return, and neither her mother nor her attorney knew where she was or why she had left. The respondent was taken into custody later that month, and the trial court summarily found her in direct criminal contempt for failing to return to court after the recess. *L.A.S.*, 111 Ill. 2d at 542. Our supreme court held that such behavior could constitute only indirect criminal contempt because the trial court was unaware of the reasons for her absence, and the absence alone "was insufficient to establish that she wilfully intended to disrupt the proceedings and embarrass the court." *L.A.S.*, 111 Ill. 2d at 544. Petitioner argues that in this case the trial court was similarly unaware of the reasons for her absence and therefore could not find her in direct contempt.

■ We note that the trial court held petitioner in contempt for "her conduct at the February 26, 2003 hearing." Therefore, the contempt finding was not limited to petitioner's failure to return after the recess. During the hearing, petitioner refused to sit down, refused to approach the bench, repeatedly stated that the proceeding was unfair, and said that she did not trust the trial judge. Such conduct was an affront to the court's dignity and authority, especially consider-

ing that petitioner is an attorney. Therefore, there was sufficient evidence to support a finding of direct criminal contempt.

Even if the contempt finding was based on only petitioner's failure to return to the hearing after the recess, we would arrive at the same conclusion. Unlike in *L.A.S.*, where the trial court was unaware of why the minor left the court, in this case petitioner stated that she wanted to leave because she thought that the trial court was treating her unfairly. In fact, petitioner apparently attempted to leave before the recess, at which point the trial judge ordered the bailiff to "keep Mrs. Slingerland." The trial judge later allowed petitioner to have a few minutes to compose herself. He clearly indicated that he would not grant a continuance and expected her to return. Even though the trial judge subsequently gave petitioner an opportunity to explain why she did not return, he already had sufficient knowledge of why she left to support the direct contempt finding; petitioner's contemptuous state of mind was properly inferred from her conduct and the circumstances. Furthermore, in this situation, such knowledge may not have been necessary. See *People v. City of East St. Louis*, 206 Ill. App. 3d 626, 637 (1990) (attorney's failure to appear was direct contempt regardless of his reasons for not attending because trial judge had told him the previous day that his appearance was expected and that she would not grant a continuance).

Finally, we note that even if petitioner's failure to return constituted only indirect contempt because the trial judge could not be certain of why she did not return, the conduct was punishable as direct contempt because petitioner admitted during the sentencing hearing that she had left because she was upset and thought that the proceeding was unfair. See *Marshall*, 278 Ill. App. 3d at 1081 (admission of indirect contempt allows trial judge to punish party for direct contempt).

Petitioner additionally argues that we should reverse the contempt finding because her absence did not "disrupt or hinder the Court in the business before it." However, as the transcript shows, petitioner's outbursts disrupted the proceedings and hindered respondent from timely finishing his rebuttal testimony. The trial court was also forced to address petitioner's failure to return. In any event, as previously stated, criminal contempt is conduct that is *calculated* to embarrass or obstruct a court in the administration of justice or lessen the court's authority or dignity (*Oleksy*, 337 Ill. App. 3d at 949), and we have concluded that there was sufficient evidence to support the trial court's contempt finding. That the trial court ultimately concluded the hearing without petitioner does not defeat the ruling.

For the foregoing reasons, we affirm the judgment of the circuit court of Ogle County.

Affirmed.

HUTCHINSON and CALLUM, JJ., concur.