# Illinois Official Reports

## Appellate Court

---

### *People v. Johnson*, 2017 IL App (1st) 162876

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ASHLEE JOHNSON, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-16-2876 |
| Filed | November 20, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-ACC-0121; the Hon. Gregory R. Ginex, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Amy Campanelli, Public Defender, of Chicago (Lynn Flanagan Wilson, Assistant Public Defender, of counsel), for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Annette C. Collins, and Mary L. Boland, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE PIERCE delivered the judgment of the court, with opinion.<br>Justices Harris and Simon concurred in the judgment and opinion. |

¶ 1      Defendant Ashlee Johnson appeals from the trial court's October 26, 2016, order finding her in direct civil contempt of court when, in defiance of a court order, she did not unlock her cellular phone. On appeal, defendant contends that the trial court abused its discretion by finding her in contempt because her failure to follow the court's order to unlock her phone was not a willful act of defiance, but rather the result of her inability to remember her passcode. We affirm.

¶ 2      Defendant was arrested on February 5, 2016, and charged by indictment with two counts of distribution of harmful material (distribution) and two counts of grooming. In the indictment, the State alleged that defendant, being over the age of 18, committed the offense of distribution when she knowingly exhibited digital images of her sex organ to Z.O. and M.O., both minors, by utilizing her cellular phone.

¶ 3      After defendant's arrest, police executed a search warrant on, *inter alia*, defendant's car and devices, including cellular phones. In defendant's car, police recovered a cellular phone matching the victims' description of the phone that defendant had used to show them sexually explicit images. Defendant's cellular phone is passcode protected and, therefore, inaccessible to the State.

¶ 4      On June 21, 2016, the State filed a motion to compel defendant either to provide the State with her cellular phone's passcode or to manually unlock her phone in the presence of the State without disclosing her passcode. In a memorandum in support of the motion, the State alleged that, between the months of September and December 2015, defendant babysat two minors, 12-year-old Z.O. and 10-year-old M.O., who spent their weekends at defendant's house. The minors were the adopted children of defendant's relative. On one occasion, defendant showed the minors, on her cellular phone, a photo of a naked adult male holding his penis. Defendant told the minors that the man in the photo was her boyfriend. Some time later, defendant showed the minors another picture on her phone, which depicted defendant's vagina being manipulated by a person's hand. Defendant told the minors that she was sending this photo to her boyfriend. The minors both described defendant's cellular phone as being in a pink case with white gems on the back.

¶ 5      Defendant filed a written response to the State's motion, arguing that it would be a violation of her fifth amendment rights for the court to compel her to provide her passcode.

¶ 6      On September 20, 2016, the court heard arguments on the State's motion. The State argued that it was entitled to the images on the phone that were shown to the victims pursuant to Illinois Supreme Court Rule 413. Ill. S. Ct. R. 413(e) (eff. July 1, 1982) ("Upon a showing of materiality, and if the request is reasonable, the court in its discretion may require disclosure to the State of relevant material and information not covered by this rule."). The State also argued that providing the passcode, or unlocking the phone for detectives in open court, would be a physical act and, therefore, would not implicate defendant's fifth amendment rights. Finally, the State argued that, even if the court found that providing the passcode was testimonial in nature, the State was entitled to the passcode because the existence and location of the images on the cellular phone falls into the "foregone conclusion" exception to the fifth amendment's protections. See *Fisher v. United States*, 425 U.S. 391, 411 (1976).

¶ 7        Defendant replied that, essentially, the State was asking her to testify against herself by providing the passcode because it was asking for the contents of her mind. During the argument, defense counsel stated that, hypothetically, "the State does not know if [defendant] has the ability to enter [the phone's] passcode." When the court questioned counsel's assertion, he responded, "Even if the Court believes [the State] probably knows that [defendant] could enter [the passcode], that doesn't mean she remembers it. She's been in jail for six months."

¶ 8        The court granted the State's motion to compel defendant to unlock her cellular phone. In announcing its decision, the court noted that it did not believe that defendant no longer remembered her passcode. Defense counsel subsequently filed a motion to reconsider the trial court's ruling. The court denied defendant's motion.

¶ 9        On October 26, 2016, the court directed defendant to unlock her cellular phone in open court. Defendant responded, "In the name of Jesus, I do not have that passcode." When the court expressed confusion with defendant's statement, defense counsel responded that "[s]he has indicated that she does not remember her passcode." The court clarified that defendant said that she does not "have" the passcode and not that she was unable to remember the passcode. Defense counsel again stated, "Well, she doesn't remember it. She has been in jail for almost ten months." The court made it "clear" to defendant that it was ordering her to unlock the phone. Defendant responded, "I do not have the passcode because I do not remember the passcode." The court stated that it did not believe that defendant could not remember the passcode and held her in direct civil contempt. The court notified defendant that she could purge the contempt at any time by complying with the court's order to unlock the phone. When defendant again claimed she could not comply because she does not remember the passcode, the court stated: "The bottom line is it is your passcode. You know it, and I don't believe for a second that you don't."

¶ 10        On the same date, the court entered a written order, holding defendant in direct civil contempt. In the order, the court found that defendant "willfully and contemptuously refused to open her cell phone *** even though she was physically able to do so." The court found that defendant's refusal to unlock her phone "has impaired and obstructed the court in its administration of justice." Defendant was sentenced to six months' imprisonment, without day-for-day credit, in the Cook County Department of Corrections. The court order noted that defendant could purge her contempt by complying with the order to unlock her cellular phone. Defendant filed a timely notice of appeal.

¶ 11        On appeal, defendant contends that her failure to comply with the court's order was not contemptuous because she did not refuse to comply with the court's order; rather, it was impossible for her to comply as she no longer remembered her passcode. Defendant further contends that, because she can no longer remember her passcode, she is unable to purge herself of her contempt, an essential element of civil contempt.

¶ 12        As an initial matter, we note that defendant does not challenge the State's right either to have her unlock her phone in open court or to provide the State with the passcode. As such, we do not address the propriety of the trial court's decision that the items sought by the State were a "foregone conclusion" and not protected by the fifth amendment. See *Fisher*, 425 U.S. at 411 ("The existence and location of the [items sought] are a foregone conclusion and the [defendant] adds little or nothing to the sum total of the Government's information by conceding that he in fact has the [items]. Under these circumstances by enforcement of the summons no constitutional rights are touched. The question is not of testimony but of

surrender." (Internal quotation marks omitted.)). Our review, therefore, is limited only to whether the trial court correctly found defendant to be in contempt of court.

¶ 13 In this court, both parties state that the standard of review for contempt appeals is an abuse of discretion. See *In re Marriage of O'Malley*, 2016 IL App (1st) 151118, ¶ 25. We note, however, that our supreme court has previously indicated that "whether a party is guilty of contempt is a question of fact for the trial court, and *** a reviewing court will not disturb the finding unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion." *In re Marriage of Logston*, 103 Ill. 2d 266, 286-87 (1984); see also *In re Marriage of Barile*, 385 Ill. App. 3d 752, 759 n.3 (2008). That said, our decision, under either standard, remains the same.

¶ 14 A finding is against the manifest weight of the evidence if the opposite conclusion is evident or the finding itself is unreasonable, arbitrary, or not based on the evidence. *Best v. Best*, 223 Ill. 2d 342, 350 (2006). "A trial court abuses its discretion only when no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *O'Malley*, 2016 IL App (1st) 151118, ¶ 25.

¶ 15 Contempt of court is " 'any act which is calculated to embarrass, hinder, or obstruct a court in the administration of justice, or which is calculated to lessen its authority or dignity.' " *People v. Penson*, 197 Ill. App. 3d 941, 945 (1990) (quoting *People v. Gholson*, 412 Ill. 294, 298 (1952)). The contempt is "civil" when, as here, the order is imposed to compel the contemnor to perform a particular act. *In re Marriage of Betts*, 200 Ill. App. 3d 26, 43-44 (1990). The contempt is "direct" because the conduct occurred in the presence of the judge. See *In re Marriage of Slingerland*, 347 Ill. App. 3d 707, 711 (2004).

¶ 16 Direct civil contempt may be summarily adjudicated immediately upon occurrence of the contemptuous acts. See *Betts*, 200 Ill. App. 3d at 52. All persons charged with civil contempt, however, are entitled to minimal due process. *Pancotto v. Mayes*, 304 Ill. App. 3d 108, 112 (1999) (citing *Shillitani v. United States*, 384 U.S. 364, 371 (1966)). Civil contempt orders must be in writing and provide an opportunity for the contemnor to purge herself of the contempt. *Id.* "Where an evaluation of credibility or the weight of the evidence was made by the circuit court, a court of review cannot substitute its judgment for that of the trier of fact unless the evidence is so unreasonable, improbable, or unsatisfactory as clearly to require a different conclusion." *People v. City of East St. Louis*, 206 Ill. App. 3d 626, 639 (1990).

¶ 17 Here, we find that the trial court did not abuse its discretion in finding defendant in direct civil contempt, nor was the contempt finding against the manifest weight of the evidence. Defendant was ordered to unlock her phone after the court heard arguments on the State's motion to compel. The court noted that the victims provided a description of defendant's cellular phone and that a phone matching that description was found in her car. The State alleged that defendant twice accessed that phone to show the minors lewd images. When the court directed defendant to unlock her phone in open court, she informed the court that she did not "have" the passcode. After defense counsel suggested that defendant did not remember the passcode due to her time in prison, defendant amended her answer to indicate that she did not "have" the passcode because she could not remember it. The court stated that it did not believe defendant and held her in contempt. See *In re Marriage of Smithson*, 407 Ill. App. 3d 597, 607 (2011) ("[T]he trial court is in a superior position to judge the credibility of the witnesses."). Given this record, we cannot say that the court's determination was so unreasonable, improbable, or unsatisfactory as to require a different conclusion.

¶ 18    Defendant nevertheless argues that the court's order was deficient because the purge provision does not afford her any relief where it requires her to remember the passcode, which is something that she is incapable of doing.

¶ 19    Civil contempt proceedings have two fundamental attributes: (1) the contemnor must be capable of taking the action sought to be coerced and (2) no further contempt sanctions are imposed upon the contemnor's compliance with the pertinent court order. *Betts*, 200 Ill. App. 3d at 44. In other words, the contemnor must have an opportunity to purge herself of contempt by complying with the pertinent court order. If the contempt sanction is incarceration, the contemnor's circumstances should be such that she may correctly be viewed as possessing the "keys to [her] cell." *Logston*, 103 Ill. 2d at 289; see also *Pryweller v. Pryweller*, 218 Ill. App. 3d 619, 633 (1991) ("Contempt will not lie when the alleged contemnor, through no fault of his own, is in a position where he cannot comply ***.").

¶ 20    In order to prevail on this argument, however, defendant "has a burden of production" to show the impossibility of compliance. See *United States v. Rylander*, 460 U.S. 752, 757 (1983); see also *City of Mattoon v. Mentzer*, 282 Ill. App. 3d 628, 636 (1996) ("[T]he contemnor bears the burden of demonstrating a legitimate inability to comply with the imposed terms."). Defendant has not met that burden here.

¶ 21    The record shows that four months passed between the State's initial filing of their motion to compel and defendant's contemptuous conduct. During those four months, when defendant knew that the State wanted her cellular phone's passcode, and that there was a possibility that she might be required to provide it to the State, she made no indication to either the State or the court that she no longer remembered her passcode. Rather, the first mention of the possibility that defendant might not remember her passcode was presented to the court, in a hypothetical, by her defense counsel during oral arguments on the State's motion to compel. It was not until more than a month later, when the court directed defendant to unlock her phone in open court, that she first informed the court that she did not "have" the passcode. As pointed out by the court, it was defense counsel, and not defendant, who added that defendant "has indicated that she does not remember her passcode." The court noted this fact when it corrected defense counsel as to what exactly defendant had initially told the court in response to the order. After carefully examining the record, we find that the trial court did not err in holding defendant in contempt or that its contempt order was in any way deficient.

¶ 22    In support of this conclusion, we note that, in her brief, defendant makes no showing that she can no longer remember the passcode. Instead, she simply states that "[i]t is very easy to forget a passcode that is no longer used regularly." This statement, which is virtually identical to statements the trial court found to be incredible, is not sufficient to satisfy defendant's burden to produce evidence that it is impossible for her to comply with the purge provision of her contempt order. See *Citronelle-Mobile Gathering, Inc. v Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991) (The burden is on defendant to introduce evidence beyond a mere assertion of inability and to show that she has made " 'in good faith all reasonable efforts to comply.' " (quoting *United States v. Ryan*, 402 U.S. 530, 534 (1971))). Defendant has undertaken no effort to demonstrate that she is unable to comply with the court's order. Accordingly, the trial court did not err in holding her in direct civil contempt.

¶ 23    For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 24    Affirmed.